**SOUTH TEXAS BANK et al., Appellants,**

**v.**

**Ricardo RENTERIA et al., Appellees.**

**No. 949.**

Court of Civil Appeals of Texas,
Corpus Christi.

May 22, 1975.

O. Otis Bakke, Gallman, Bakke & Schiwetz, Houston, Ramon Garcia, Edinburg, for appellants.

Oscar Palacious, Pharr, O. C. Hamilton, Jr., Neal Norquest, McAllen, for appellees.

OPINION

BISSETT, Justice.

This is an appeal from a judgment that cancelled the certificate of title to an automobile previously issued to one person, and ordered the issuance of a certificate of title to the same vehicle to another person. Ricardo Renteria instituted suit to require the Motor Vehicle Division of the Texas Highway Department to issue a certificate of title to the automobile to him. Robert A. Stephenson, South Texas Bank, Les Mannering Oldsmobile Company, and the First State Bank of Alamo intervened.

Following a trial before the court without a jury, judgment was rendered which ordered the Motor Vehicle Division of the Texas Highway Department to cancel the certificate of title to an automobile theretofore issued to Robert A. Stephenson (Stephenson), and to issue a certificate of title to the automobile to Richardo Renteria (Renteria). Stephenson and South Texas Bank have appealed.

Stephenson claims that he purchased the automobile prior to the time that it was purchased by Renteria. South Texas Bank is shown as a lienholder on the title asserted by Stephenson. The automobile in question was also sold to Les Mannering Oldsmobile Company, who, in turn, sold it to Renteria. The First State Bank of Alamo is shown as a lienholder on the title asserted by Renteria.

Stephenson, who claims title under a certified copy of the original certificate of title to the automobile, contends that his title, being earlier in time, is superior to that asserted by Renteria since his certificate of title was issued prior to the time that Renteria made application for a certificate of title to the automobile. Renteria, who claims title under the original certificate of title, contends that his title is superior to that asserted by Stephenson since he is an innocent purchaser for value without notice that the automobile had been sold under a certified copy of the original certificate of title prior to the time that he (Renteria) purchased it.

The material facts are undisputed. The automobile, a 1973 Oldsmobile Cutlass, was first sold new by Les Mannering Oldsmobile Company (Les Mannering), McAllen, Texas, to one Juan J. Tijerina (Tijerina), on August 30, 1973. The sale was for cash. An original certificate of title (No. 65375410) was issued to Tijerina on September 13, 1973. Tijerina applied for a certified copy of the original certificate of title on January 22, 1974, which was issued to him on the same day.

On January 30, 1974, Tijerina, who had been in Stephenson's employ for about a week, approached Stephenson at his place of business in Houston, Texas, and asked for a loan of $3,000.00. Stephenson, in relating the details of the conversation with Tijerina, testified:

". . . I first told him we could not loan him the money that he needed, $3,000.00. He assured me he would pay us back and as a good faith effort he would put his car up as collateral on this loan. I was not able to get in touch with our banker and he indicated to me he had to be in McAllen the next morning. So I had him execute a Power of Attorney so that I could endorse whatever notes or assignments the Bank would require to loan him the money on the car, and I gave him my personal check for $3,000.00.

\* \* \* \* \* \*

Q But you were not going to keep the car? He was going to have the use of the car?

A He had the car.

Q It was his?

A Right.

\* \* \* \* \* \*

A It was his, subject to that loan.

Q Subject to the loan?

A Right.

\* \* \* \* \* \*

—I gave him $3,000.00, but I went on to explain to him that he would have to pay not only the $3,000.00, and interest, but any transfer fees if the bank would not put it in his name, which turned out to be the case."

It is shown by the evidence that South Texas Bank refused to make a loan to Tijerina, but did agree to loan $3,000.00 to Stephenson, conditioned that he (as agent for Tijerina) transfer the title to the automobile to himself and show a lien thereon

in favor of the Bank. With reference to this phase of the transaction, Stephenson said:

> "The next morning I was in touch with the banker who insisted that it (the title) be put in my name and the lien be recorded in the Bank's favor".

Accordingly, Stephenson, on January 31, 1974, pursuant to a power of attorney from Tijerina, executed an assignment on the back of the certified copy of the certificate of title which assigned the title to the automobile to him. He made application for a certificate of title through the Tax Collector of Harris County, Texas, on January 31, 1974, and signed a $3,000.00 note to the bank. The money ($3,000.00) was deposited by Stephenson, and his personal check to Tijerina, dated January 30, 1974, was subsequently cashed by Tijerina.

Tijerina was in McAllen at that time. Stephenson then telephoned Tijerina, apparently on February 1, 1974. Stephenson said that he explained to Tijerina that the bank insisted that title to the automobile be transferred to him (Stephenson). Tijerina voiced no objection. In recalling that conversation, Stephenson made the statement:

> "I told him the amount of the note, that it was due on or before April 30th at which time he assured me he would be back in Houston and pay that note or surrender the car to me".

Stephenson, when asked why he would "lend a perfectly unknown person $3,000.00 on a power of attorney and let the individual keep the car", replied:

> "The reason being, I explained to him I would not loan him the money except when he agreed to put up this automobile as collateral on the money that he was advanced".

When queried further concerning the transaction with Tijerina, Stephenson testified:

> "I only agreed to loan him what the bank would loan me on that piece of collateral".

Stephenson permitted Tijerina to remain in possession of the automobile. Tijerina never did pay either Stephenson or the bank any part of the $3,000.00.

The Motor Vehicle Division of the Texas Highway Department issued a new certificate of title (No. 66657621) to Stephenson on February 20, 1974.

Tijerina traded the same automobile to Les Mannering on February 15, 1974. In doing so, he, in proper person, as seller, executed the assignment on the back of the *original* title certificate whereby the title was assigned to Les Mannering. He delivered the possession of the automobile to Les Mannering at that time. The automobile was sold by Les Mannering to Renteria on February 25, 1974 for $3,495.00. Application for a certificate of title was made by Renteria through the Hidalgo County Tax Collector on February 26, 1974.

On March 15, 1974, the Motor Vehicle Division of the Texas Highway Department notified all concerned of its refusal to issue a certificate of title to the automobile in the name of Ricardo Renteria on the ground that "there is a later record of title outstanding covering the above referenced vehicle . . . the later record of title being Title number 66657621 which was issued January 20, 1974 in the name of Robert A. Stephenson and records a lien to South Texas Bank". Renteria then filed suit to resolve the controversy.

The trial court "ordered that the Motor Vehicle Division of the Texas Highway Department issue a certificate of title to Ricardo Renteria to the 1973 Oldsmobile, Motor or Vehicle Identification No. 3F37K3R243306, and cancel the certificate of title issued to Robert A. Stephenson". The Motor Vehicle Division of the Texas Highway Department did not appeal from that judgment, and has agreed to be bound by the final decision in this case.

Findings of fact and conclusions of law were neither requested nor filed. Tijerina did not testify at the trial. Stephenson and South Texas Bank admit that Tijerina committed a fraud upon Les Mannering when he executed the assignment on the back of the original certificate of title, but they contend that such fraud is immaterial to the disposition of this appeal since Tijerina did not have legal title to the automobile when he traded it to Les Mannering. They claim that "Tijerina possessed no title to convey to Les Mannering Oldsmobile Company"; and "having no title he could not clothe Les Mannering Oldsmobile with any title". They take the position that the transaction between Tijerina and Stephenson constituted a *sale* of the automobile, subject to "an equitable right to reconveyance upon repayment of the money to Stephenson".

It has been held that a deed absolute on its face may be shown to have been intended as a mortgage given to secure a debt owing to the grantee by the grantor. Wilbanks v. Wilbanks, 160 Tex. 317, 330 S.W.2d 607 (1960). There is no reason why a sale of personal property, absolute on its face, could not have been intended as a mortgage given to secure a debt owing to the purchaser by the seller.

■ The fact that the assignment to Stephenson of the title to the automobile is in form a sale absolute, which was in every way acceptable to the Motor Vehicle Division of the Texas Highway Department as a valid transfer of title, does not preclude the transaction from being a mortgage as between Stephenson and Tijerina. To constitute a mortgage, the grantor of real property or seller of personal property, as the case may be, must have intended to pledge his property for the payment of a sum of money, or the performance of some other act. Wells v. Hilburn, 129 Tex. 11, 98 S.W.2d 177 (1936, opinion adopted); 55 Am.Jur.2d, Mortgages, § 33, pp. 215–216. The characterization of the transaction by the parties is

not conclusive as to whether it was intended by the parties to be a sale absolute, a conditional sale, or a mortgage. Regardless of the form of the instrument, if the parties intended to execute the instrument in question for the purpose of securing an obligation, it will be construed as a mortgage. Fowler v. Stoneum, 11 Tex. 478, 507–508 (1854); Starns v. Adams, 484 S.W.2d 454 (Tex.Civ.App.—Waco 1972, writ dism'd); Wood v. De Winter, 280 S.W. 303 (Tex.Civ.App.—Fort Worth 1926, no writ). If the transaction itself, despite the form of the instrument and regardless of the label affixed by the parties to the transaction, is, in fact, designed as a security for the payment of money by the seller to the purchaser, equity will treat it as a mortgage. Bradshaw v. McDonald, 147 Tex. 455, 216 S.W.2d 972 (1949). Moreover, retention of possession and enjoyment of personal property by the seller is an indication that the transaction was intended as a mortgage and not as a sale, absolute or otherwise. Ruffier v. Womack, 30 Tex. 332, 340 (1867); Napper v. Johnson, 464 S.W.2d 496 (Tex.Civ.App.—Waco 1971, writ ref'd n. r. e.); 59 C.J.S. Mortgages § 10b(5), p. 38.

■ The record clearly shows that the transfer of the title to the automobile by Tijerina to Stephenson was intended to secure the $3,000.00 debt to Stephenson. South Texas Bank was fully informed of the intention of parties and even suggested the procedure to be followed. The testimony of Stephenson shows ·that the $3,000.00 was a *loan* to Tijerina, not the purchase price for the automobile. Tijerina was permitted to retain possession of the car. These factors show that all parties to the transaction, Stephenson, Tijerina and South Texas Bank, intended the transfer of title to the automobile to be a mortgage, and nothing more. We so hold. The record further shows that the transaction between Tijerina and Les Mannering and that between Les Mannering and Renteria each constituted a sale absolute of the automobile in question.

The judgment of the trial court was correct and must be affirmed.

Even if it be assumed that the transaction between Stephenson and Tijerina was a sale absolute, and not a mortgage, there are other reasons why Renteria should prevail over Stephenson in this case. The Certificate of Title Act of the State of Texas, Vernon's Tex.Rev.Civ.Stat. Ann. art. 6687–1 (1971), was enacted for the protection of the public, and the provisions thereof are to be liberally construed to effectuate the purposes for which it was enacted. Bank of Atlanta v. Fretz, 148 Tex. 551, 226 S.W.2d 843 (1950). The Act provides the only procedures for a valid transfer of title to a motor vehicle. It does not, however, preclude a transaction, as between seller and purchaser, from being a mortgage.

Sec. 36 of the Act outlines the procedures for obtaining a certified copy of the original certificate of title where the original has been lost or destroyed. That section also tells how a purchaser under a certified copy of the original certificate may protect himself from what could happen in the event the original certificate is used by the original owner to thereafter sell the automobile to a third person. Part of the section reads as follows:

> ". . . Any purchasers or lien holders of such motor vehicle may at the time of such purchase or at the time lien is established require the seller or owner to indemnify him and all subsequent purchasers of said motor vehicle against any loss which he or they may suffer by reason of any claim or claims presented upon the said original certificate of title . . ."

The Act very plainly recognizes that a situation such as that which exists in the case at bar might arise. In such event, it is clear that the Legislature must have intended that an innocent purchaser for value who deraigns title through a regular chain of transfers under the original certificate of title and who takes possession of the vehicle should prevail against a purchaser who deraigns title under a certified copy of the original certificate. Any other construction would render the above-quoted portion of Sec. 36 of the Act meaningless. If the Legislature had not so intended, it would not have included such provision in the Act, or it would have stated that the issuance of a new certificate of title pursuant to a sale under a certified copy of the original certificate prior to a transfer of the title under the original certificate would cancel the original certificate and cut off the rights of all persons claiming thereunder.

It was established by the testimony of a Regional Supervisor for the Motor Vehicle Division of the Texas Highway Department that the Department merely processes applications for title to motor vehicles and does not attempt to decide the issue of superior title. The witness further testified that had the Renteria application for a new certificate of title reached the Department office first it would have been processed first. In that event, the Department would have issued a new certificate of title to Renteria, and would have refused to issue such a certificate to Stephenson.

We conclude that the portion of Sec. 36 of the Act under discussion was meant to deal with a situation just like the one presented by this appeal. Its clear import is that a title which emanates under an original certificate is superior to that which emanates under a certified copy of the original, despite the fact that the application for a new certificate under the certified copy reaches the Department first. The purchaser under the certified copy is, in effect, advised that any title issued thereunder may be later cancelled if an application for title under the original certificate, regular on its face, is subsequently presented. It is suggested, though not required, that a purchaser under the certified copy protect himself by means of indemnity from the seller as the law so provides.

A reasonable interpretation of the Act and common prudence make it the duty of a person who purchases a motor vehicle under a *certified copy* of the original certificate of title to require indemnity from the seller of such automobile if he is to be protected from the claim of an innocent third person who claims title under the original certificate. If a purchaser under the certified copy is derelict in that duty, he (and his lienholder, if any) must suffer the consequences of his own negligence. See Higgins v. Robertson, 210 S. W.2d 250 (Tex.Civ.App.—Amarillo 1948, writ ref'd n. r. e.). Here, neither Stephenson nor South Texas Bank required such indemnity from Tijerina.

Tijerina was in actual possession of the automobile when he contacted Less Mannering. There is nothing in the record to put Les Mannering on notice that the automobile had been previously sold by Tijerina to Stephenson, or that South Texas Bank had a lien thereon. The original certificate of title, which showed Tijerina to be the owner of the automobile, was also in the possession of Tijerina on that date. Although not important to the decision of this case, it is interesting to note that the transfer of title to Les Mannering was made on February 15, 1974, which was five (5) days *before* the certificate of title was issued to Stephenson. Therefore, on February 15, 1974, the only title of record in the Motor Vehicle Division of the Texas Highway Department was the title evidenced by the original certificate, which, as already stated, was issued to Tijerina on September 13, 1973. Les Mannering was an innocent purchaser for value.

Renteria purchased the automobile in good faith from Les Mannering and for a valuable consideration. He took a transfer of the title to the automobile in conformity with the Certificate of Title Act. He relied upon the original certificate of title relating to the ownership of the automobile, was not negligent in doing so, and followed all statutory provisions in an attempt to obtain a new certificate of title.

We have concluded that title to an automobile which is evidenced by an original certificate of title, accompanied by physical possession of the automobile by the person who is shown by the original certificate to be the owner thereof, is the best title to the automobile. An innocent purchaser for value from such a person should not be required to look further with respect to the title.

As between Renteria and Stephenson, we hold that Renteria has the superior title to the automobile. The principles of fairness and commercial expediency require such a holding. Under the circumstances here presented, there is more reason to protect Renteria, who holds title under the original certificate of title, as opposed to Stephenson, who holds title under a certified copy of the original certificate of title. We further hold that Renteria's title is free of the lien asserted by South Texas Bank.

For the above reasons, we affirm the judgment of the trial court. All of the points of error which have been brought forward by Stephenson and South Texas Bank, appellants, have been carefully considered, and they are all overruled.

Affirmed.