**NXCESS MOTOR CARS, INC., Appellant,**

v.

**JPMORGAN CHASE BANK, N.A., Appellee.**

**No. 01–09–00018–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 20, 2010.

Andrew M. Taylor, David Nathaniel Harvey, Gabriel W. Bonacci, Mark Allen Counts, Counts & Bonacci, L.L.P., Houston, TX, for appellant.

George M. McDonald, Richardson, TX, Jennifer Soldano, Austin, TX, Robert G. Devlin, Devlin, Naylor & Walker, Houston, TX, for appellee.

Panel consists of Justices JENNINGS, HANKS, and BLAND.

## OPINION ON REHEARING

JANE BLAND, Justice.

This is a suit to resolve the title to a Mercedes S550 and a lien against that title. The trial court granted summary judgment to the lienholder, JPMorgan Chase Bank, N.A. (Chase), on its conversion claims against Xavier Valeri and U.S.

Bank, N.A., and severed this judgment from the cause. Valeri and U.S. Bank both had brought third-party claims against NXCESS Motor Cars, Inc. (NXCESS), for breach of warranty and breach of contract. Concerned that the trial court's summary judgment rulings are dispositive of the claims against it, NXCESS appeals the trial court's order granting Chase's motion for summary judgment. NXCESS contends that the trial court erred by (1) failing to find that NXCESS and Valeri were buyers in the ordinary course, (2) failing to find that the Texas Certificate of Title Act conflicted with the Texas Business and Commerce Code, (3) failing to find that the Code preempts the Act, and (4) finding Valeri liable for conversion. Chase moves to dismiss the appeal for lack of standing. We grant rehearing, withdraw our opinion and judgment dated February 18, 2010, and issue this opinion in its stead to address two arguments NXCESS advances in its motion. Our disposition of the case is unchanged. We conclude that NXCESS has standing to appeal the judgment, but that the trial court's rulings were proper. We affirm.

## Background

In June 2007, James Cavazos purchased a new Mercedes S550 from Mercedes–Benz of Sugar Land and gave Chase a purchase money security interest in the vehicle. The Texas Department of Transportation (TxDOT) recorded Chase's lien on the original certificate of title. After making only three payments, Cavazos forged a release of the lien against the title and applied for a certified copy of the original certificate of title. In reliance on the certified copy and the forged release letter, the Avatar–Foundation Trust (Avatar Trust) purchased the vehicle from Cavazos and signed the "assignment of title" section on the reverse of the certified copy of the title. Avatar Trust then applied for an original certificate of title to the vehicle, submitting the certified copy and forged release letter with its application.

TxDOT then issued a second "original certificate" of title, which listed Avatar Trust as the owner and indicated that no third parties held any liens on the vehicle. Avatar Trust presented this original certificate of title· to NXCESS in February 2008. According to NXCESS, it "performed the usual and customary due diligence to determine good, clean, clear title," and it did not discover Chase's lien on the vehicle prior to purchase.

Shortly after NXCESS purchased the vehicle from Avatar Trust, Valeri purchased the vehicle from NXCESS and granted a purchase money security interest to U.S. Bank. At this time, NXCESS and U.S. Bank entered into an "indirect dealer agreement," in which U.S. Bank purchased Valeri's retail installment contract with NXCESS and NXCESS warranted that title to the vehicle was free of all liens, encumbrances, claims, and defenses. After Valeri's purchase, TxDOT issued an original certificate of title which listed Valeri as the owner and U.S. Bank as the sole lienholder.

Chase sued Cavazos for fraud and conversion and sued TxDOT, Valeri, and U.S. Bank solely for conversion. Chase sought the balance of its loan to Cavazos, possession of the Mercedes, and declarations that Chase's lien is superior to all other liens and any titles issued after the initial sale to Cavazos are void. Chase then moved for traditional summary judgment against Cavazos, Valeri, and U.S. Bank, arguing that the summary judgment evidence entitled Chase to judgment as a matter of law on its conversion claim. Valeri, U.S. Bank, and NXCESS responded to Chase's motion, contending that no conversion oc-

curred because both NXCESS and Valeri were buyers in the ordinary course of business and took title to the Mercedes free of Chase's lien.

Though NXCESS responded to the motion for summary judgment, Chase asserted no direct claim against it. Valeri, however, had sued NXCESS for breach of warranty and for violations of the Deceptive Trade Practices Act, and U.S. Bank had sued it for breach of contract and breach of warranty. US Bank, in its original cross claim against NXCESS, pleaded:

> In addition, should JPMorgan Chase prevail on its claim to invalidate U.S. Bank's lien, additional warranty violations would be triggered regarding NXcess's obligation to assign the Contract and Vehicle title free of encumbrances and to obtain a first priority security interest in the Vehicle in favor of U.S. Bank. In the event of a finding in favor of Plaintiff JPMorgan Chase on its lien claim, NXcess is liable to U.S. Bank for the amounts identified above.

The trial court granted summary judgment to Chase against Cavazos, Valeri, and U.S. Bank. The trial court authorized Chase to foreclose its lien, ordered Cavazos to pay the remaining $96,941 on his loan from Chase, ordered Valeri to turn over possession of the Mercedes to Chase, declared that Chase's lien is superior to all other claims and liens, and ordered TxDOT to void the title issued to Valeri and all certificates of title issued after July 3, 2007. The trial court then severed the summary judgment order from the remaining claims in the case. The trial court's order did not adjudicate the claims against NXCESS.

Valeri complied with the judgment by turning over possession of the Mercedes to Chase, which Chase then sold to satisfy its lien. NXCESS appeals the summary judgment order.

## Discussion

### Appellate Jurisdiction

█ We first examine whether we have jurisdiction over the appeal. *See Smith v. Houston Lighting & Power Co.,* 7 S.W.3d 287, 288 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993)). Chase moves to dismiss the appeal, contending that NXCESS lacks standing to prosecute it. Chase never asserted any claims against NXCESS in the trial court, which became a party to the suit only after Valeri and U.S. Bank asserted third-party claims against it.[1]

█ Generally, only parties of record may appeal a final judgment. *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n,* 1 S.W.3d 108, 110 (Tex.1999) (per curiam). To be entitled to appellate review, the party of record's own interests must also be prejudiced by the trial court's decision. *Buchele v. Woods,* 528 S.W.2d 95, 98 (Tex.Civ.App.-Tyler 1975, no writ); *Menetti v. Chavers,* 974 S.W.2d 168, 171 (Tex.App.-San Antonio 1998, no pet.). NXCESS appeared in the case by filing its answer to Valeri's third-party petition in June 2008, four months before the trial court granted Chase's motions for summary judgment. Although NXCESS was not a party to the summary judgment proceedings on Chase's claims, NXCESS was a party of record.

NXCESS also demonstrates that the judgment on appeal prejudices its interests. In its order granting Chase's motions for summary judgment, the trial court ruled that (1) Valeri must turn over

---

1. After the trial court severed Chase's claims it granted U.S. Bank's motion for summary judgment and rendered judgment against NXCESS for breach of warranty.

possession of the vehicle to Chase; (2) Chase's lien was superior to any claims by Valeri and U.S. Bank; (3) Chase's title was superior to all titles issued subsequent to the initial title to Cavazos; and (4) TxDOT must void and destroy all titles issued after the initial title. As NXCESS contends, this ruling voided the contracts NXCESS had with Valeri and U.S. Bank and subjected NXCESS to liability for breach of warranty and breach of contract. Shortly after the trial court severed Chase's claims, U.S. Bank moved for summary judgment on its breach of warranty claim against NXCESS. US Bank stated:

> The Court specifically ruled as a matter of law, in granting [Chase's] MSJ, that the title transferred to U.S. Bank by Nxcess was "void;" that [Chase's] lien was "superior to any claim of ... U.S. Bank ...";  and that TXDOT should "void and destroy" the title issued to U.S. Bank on the vehicle. US Bank is, therefore;  entitled to summary judgment that Nxcess breached multiple representations/warranties to U.S. Bank under the Agreement with respect to the Valeri contract....

The trial court agreed with U.S. Bank and rendered judgment against NXCESS. We hold that the trial court's summary judgment order prejudiced the interests of NXCESS, a party of record, and thus NXCESS has standing to appeal. We deny Chase's motion to dismiss for lack of jurisdiction.

*Standard of Review*

We review de novo the trial court's grant of a motion for summary judgment. *Provident Life & Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex.2003). For the trial court to properly grant a traditional motion for summary judgment, the movant must establish that there is no genuine issue as to any material fact and the movant is thus entitled to judgment as

a matter of law. TEX.R. CIV. P. 166a(c). When a plaintiff moves for summary judgment on its own claim, the plaintiff must conclusively prove all essential elements of its cause of action as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). A genuine issue of material fact exists if the non-movant produces more than a scintilla of probative evidence regarding the challenged element. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004); *see also Forbes Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 172 (Tex.2003) ("More than a scintilla of evidence exists if it would allow reasonable and fair minded people to differ in their conclusions."). We examine the evidence in the light most favorable to the non-movant and we indulge all reasonable inferences and resolve all doubts in the non-movant's favor. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex.2007) (per curiam).

*Buyers in the Ordinary Course of Business*

In its first issue, NXCESS contends the trial court erred by failing to find that it and Valeri qualified as buyers in the ordinary course of business. The Texas Business and Commerce Code, which contains Texas' version of the Uniform Commercial Code, provides that title to goods, including motor vehicles, passes to the buyer at the time and place the seller completes performance regarding the physical delivery of the goods, and title passes despite the reservation of a security interest and despite the delivery of a title document at a later time. *See* TEX. BUS. & COM.CODE ANN. § 2.401(b) (Vernon 2009); *see also Vibbert v. PAR, Inc.*, 224 S.W.3d 317, 322 (Tex.App.-El Paso 2006, no pet.) ("Motor vehicles are included in the UCC's definition of 'goods.'"). A "buyer in the ordinary course of business" may take the goods free of a security interest created by

the buyer's seller, even if that security interest is perfected and the buyer is aware of the interest at the time of purchase. TEX. BUS. & COM.CODE ANN. § 9.320(a) (Vernon 2002). To qualify as a buyer in the ordinary course of business, the buyer must "buy[ ] goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person . . . in the business of selling goods of that kind." *Id.* § 1.201(9) (Vernon 2009). NXCESS relies on these provisions to assert that it is entitled to the Mercedes, regardless of any defect in the title.

The Texas Supreme Court has previously held, however, that a forged certificate of title passes no title to the vehicle. *See Drake Ins. Co. v. King,* 606 S.W.2d 812, 817 (Tex.1980). The Austin Court of Appeals has extended this holding to include situations in which the certificate of title itself is not forged, but a release of lien, on which the certificate of title is based, is forged. *See Lee v. The Bank, N.A.,* 23 S.W.3d 129, 131 (Tex.App.-Austin 2000, no pet.). In *Lee,* the original purchaser of the vehicle obtained a certified copy of the certificate of title and forged a letter from The Bank stating that its lien had been released. *Id.* at 130. The certified copy, which reflected The Bank's lien, was assigned to two dealers prior to Lee. Lee, in reliance on the forged release, applied for an original certificate of title and stated on his application that no liens existed and the evidence of ownership was a "certified copy [of a] Texas title." *Id.* TxDOT issued an original certificate of title to Lee that did not indicate any lienholders. *Id.* at 130–31. The Austin Court of Appeals held that Lee did not defeat The Bank's security interest because "the buyer acquires no title when any link in his chain of title is forged." *Id.* at 131. Hence, even though the certificate of title itself was not a forgery, "a forged document on which a cer-

tificate of title is based voids that title." *Id.; see also Dublin Nat'l Bank v. Chastain,* 167 S.W.2d 795, 797 (Tex.Civ.App.-Eastland 1942, writ ref'd) ("Proof of the forgery of a link of title is tantamount to proof that the claimant of such title has none, or, in other words that he is not the owner of the property.").

■ In this case, Cavazos applied for and received a certified copy of the certificate of title, which noted Chase's lien. Cavazos then assigned this certified copy and gave his forged release of lien to Avatar Trust. In reliance on these documents, Avatar Trust applied for an original certificate of title, stating that "no liens existed" and the ownership evidence is a "certified copy [of a] Texas title." Although none of the certificates of title involved in this chain of transactions are forgeries, the release of lien was. Following *Lee,* we hold that Avatar Trust's certificate of title is void because it obtained it using a forged release of lien. Avatar Trust never acquired a title to the Mercedes. *See Lee,* 23 S.W.3d at 131. Avatar Trust thus had no title which it could pass on to NXCESS, and NXCESS had no title which it could pass on to Valeri. *See* TEX. BUS. & COM. CODE ANN. § 2.403(a) (Vernon 2009) ("A purchaser of goods acquires all title which his transferor had or had power to transfer . . . .").

NXCESS contends that *Lee* is inapplicable to this case because Lee relied on a certified copy of a certificate of title, and thus could not be a buyer in the ordinary course, whereas NXCESS and Valeri both relied on an original certificate of title. We disagree. *Lee's* analogue in this case is neither NXCESS nor Valeri, but is instead Avatar Trust, which relied on a certified copy of the certificate of title and a forged release of lien in purchasing the Mercedes from Cavazos. Just as the forged release

of lien voided Lee's certificate of title, Cavazos' forged release of lien voided the certificate of title of Avatar Trust. None of the subsequent purchasers took valid title to the car. *See Lee*, 23 S.W.3d at 131.

NXCESS further contends that Cavazos' fraudulent conduct does not disturb it and Valeri's status as buyers in the ordinary course, arguing that Avatar Trust had voidable title, instead of void title, and persons with voidable title can transfer good title to a good-faith purchaser for value. *See* TEX. BUS. & COM.CODE ANN. § 2.403(a); *see also Kotis v. Nowlin Jewelry, Inc.*, 844 S.W.2d 920, 923 (Tex.App.-Houston [14th Dist.] 1992, no writ). Section 2.403(a) specifies that a purchaser obtains voidable title if the goods are delivered through a transaction of purchase even if the delivery "was procured through fraud punishable as larcenous under criminal law." TEX. BUS. & COM.CODE ANN. § 2.403(a). In *Kotis*, Sitton purchased a watch from Nowlin Jewelry with a forged check and then sold the watch to Kotis, who asserted that he was a good-faith purchaser. *Kotis*, 844 S.W.2d at 921–22. In determining whether Sitton had voidable title, and the ability to transfer good title to Kotis, the Fourteenth Court of Appeals distinguished between a thief, who wrongfully takes goods against the will of the owner and has void title, and a swindler, who fraudulently induces the owner to deliver goods voluntarily and has voidable title. *See id.* at 922–23. Because Sitton did not obtain the watch against Now-

lin Jewelry's will, but instead used a forged check to fraudulently induce Nowlin Jewelry into delivering the watch, Sitton received voidable title and could pass good title to Kotis, if Kotis qualified as a good-faith purchaser. *Id.* The Fourteenth Court noted, however, that section 2.403(a)(4) only applies to "cases involving acts fraudulent to the seller such as where the seller delivers the goods in return for a forged check." *Id.* at 923.

In contrast to *Kotis*, in this case, the seller of the vehicle, Cavazos, committed the fraud by forging the release of lien and giving it to Avatar Trust. Avatar Trust did not fraudulently induce Cavazos to sell the vehicle. As a result, Avatar Trust did not obtain voidable title to the car and could not transfer good title to NXCESS under section 2.403(a).[2] When Avatar Trust used Cavazos' forged release of lien to obtain an original certificate of title, the forgery voided Avatar Trust's certificate of title. *See Lee*, 23 S.W.3d at 131; *cf. Dyson Descendant Corp. v. Sonat Exploration Co.*, 861 S.W.2d 942, 947 (Tex.App.-Houston [1st Dist.] 1993, no writ) ("A forged deed is void ab initio.... No person can be an innocent purchaser of land where one of the links in the chain of title is a forgery."); *Kirkpatrick Joint Venture v. Loots*, 826 S.W.2d 205, 210 (Tex.App.-Fort Worth 1992, writ denied) ("The protection usually afforded to a bona fide purchaser for value without notice does not apply when such purchaser's claim is de-

---

**2.** NXCESS cites two cases from Alabama and Georgia to support its contention that Avatar Trust obtained voidable title. *See Hodges Wholesale Cars v. Auto Dealer's Exchange*, 628 So.2d 608, 610–11 (Ala.1993); *Charles Evans BMW, Inc. v. Williams*, 196 Ga.App. 230, 395 S.E.2d 650, 651 (1990). In *Hodges*, the initial purchaser's check was returned for insufficient funds after he sold the vehicle to a dealer while representing that he was the initial seller. *Hodges*, 628 So.2d at 609.

Similarly, in *Williams*, the initial purchaser paid with a forged cashier's check and sold the car to a dealer while representing that he was the initial seller. *Williams*, 395 S.E.2d at 651. In both of these cases, the courts held that the initial purchasers, like Sitton in *Kotis*, fraudulently induced the seller to sell the vehicle and thus obtained voidable title. *Hodges*, 628 So.2d at 610–611; *Williams*, 395 S.E.2d at 651–52.

pendent upon a forged instrument.... A void instrument passes no title, and the mere fact that the grantee-mortgagee is an innocent purchaser makes no difference."). Because Avatar Trust possessed void, and not voidable, title, it could not transfer valid title to NXCESS.

NXCESS relies on the Corpus Christi Court of Appeals' decision in *South Texas Bank v. Renteria* for the proposition that it and Valeri have the "best title," and thus are buyers in the ordinary course, because they took physical possession of the Mercedes and their claim derives from an original certificate of title. 523 S.W.2d 780, 786 (Tex.Civ.App.-Corpus Christi 1975, no writ). In *Renteria,* the original owner of the vehicle obtained a certified copy of the certificate of title, and assigned that title to his employer in exchange for a loan, but retained possession of the vehicle. *Id.* at 782–83. The employer received a new original certificate of title from TxDOT. *Id.* at 783. The owner then traded the vehicle to the original dealership, and assigned his original certificate of title to the dealer, who then sold the vehicle to Renteria. *Id.* In the ensuing title dispute between the employer's lender and Renteria, the Corpus Christi court held that because Renteria had physical possession of the vehicle and an original certificate of title, instead of a certified copy, he had superior title to the vehicle. *Id.* at 786.

*Renteria* is distinguishable. We first note that Chase and NXCESS both claim superiority of title based upon an original, and not a certified, certificate of title. Avatar Trust assigned its original certificate, with no lien noted, to NXCESS, and Chase retained the first original certificate from Mercedes–Benz of Sugar Land to Cavazos, with Chase noted as the first lienholder. Second, in *Renteria,* none of the certificates of title or accompanying release of lien documents involved forger-ies. Here, even though NXCESS took physical possession of the Mercedes as well as an original certificate of title assigned from Avatar Trust, the forged release of lien, upon which this certificate was based, voided Avatar Trust's certificate of title. Under these facts, NXCESS and Valeri cannot have the "best title" to the vehicle. The forged release of lien, which forms the basis for Avatar Trust's certificate of title, voids that title and all subsequent certificates of title. Thus, the trial court properly rejected NXCESS's defense that it and Valeri are buyers in the ordinary course of business.

*Conflict Between the Certificate of Title Act and the Code*

■ In its second and third issues, NXCESS contends that the trial court erred by failing to find that the Certificate of Title Act conflicts with the Business and Commerce Code and by failing to preempt application of the Act in favor of the Code. Chapter 501 of the Transportation Code encompasses the Texas Certificate of Title Act, and section 501.005 states that "[c]hapters 1–9, Business & Commerce Code, control over a conflicting provision of this chapter." TEX. TRANSP. CODE ANN. § 501.005 (Vernon 2007). If the same factual situation "can harvest different results under different statutes, the statutes are in conflict." *Vibbert,* 224 S.W.3d at 324. Courts have previously held that, for example, section 2.401(b) of the Code and sections 501.071(a) and 501.073 of the Act conflict regarding when and how title to vehicles transfers, and therefore under section 501.005 of the Act, section 2.401 of the Code trumps. *See id.; First Nat'l Bank v. Buss,* 143 S.W.3d 915, 923–24 (Tex.App.-Corpus Christi 2004, pet. denied).

In this case, NXCESS contends that section 501.134(c) of the Act, relied upon by Chase, conflicts with section 2.403 of

the Code, and therefore section 2.403 prevails. Section 501.134(c) provides that, when TxDOT issues a certified copy of the title, "[a] subsequent purchaser or lienholder of the vehicle only acquires the rights, title, or interest in the vehicle held by the holder of the certified copy." TEX. TRANSP. CODE ANN. § 501.134(c) (Vernon 2007). Section 2.403 states that "[a] purchaser of goods acquires all title which his transferor had or had power to transfer.... A person with *voidable title* has power to transfer a good title to a good faith purchaser for value." TEX. BUS. & COM.CODE ANN. § 2.403(a) (emphasis added). Both of these statutes essentially state that a subsequent purchaser cannot acquire greater rights and title than their transferor has, although section 2.403 creates an exception when a person with voidable title transfers the goods to a good-faith purchaser for value: the purchaser receives good title. *See id.*

■ The exception, however, is not applicable here. Upon purchasing the Mercedes from Cavazos, Avatar Trust obtained the same rights and title as Cavazos: ownership subject to Chase's perfected lien. The forged letter of release voided the original certificate of title TxDOT subsequently issued to Avatar Trust. *See Lee,* 23 S.W.3d at 131. Avatar Trust held void title, not voidable title, and thus had no good title to transfer. Regardless of

whether the Certificate of Title Act or the Business and Commerce Code govern, Avatar Trust and all subsequent purchasers received void title to the vehicle due to the forgery in the chain of title.[3] We hold that the trial court did not err in ruling that the Act and the Code do not conflict so as to require that the Act be preempted in favor of the Code.

*Valeri's Liability for Conversion*

NXCESS further contends that Valeri was a buyer in the ordinary course who purchased the vehicle in good faith and without knowledge of Chase's lien, and thus the trial court erred in ruling that Valeri converted the vehicle. To be entitled to summary judgment on its claim for conversion, Chase must establish, as a matter of law, that (1) Chase owned or had possession of the property or entitlement to possession; (2) Valeri unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, Chase's rights as an owner; (3) Chase demanded return of the property; and (4) Valeri refused to return the property. *Ashdon, Inc. d/b/a Impression Bridal v. Gary Brown & Assocs., Inc.,* 260 S.W.3d 101, 116 (Tex.App.-Houston [1st Dist.] 2008, no pet.). As summary judgment evidence, Chase attached the account information for Cavazos, indicating that he defaulted on

---

**3.** NXCESS contends that even if the transfer to Avatar Trust did not comply with the Certificate of Title Act, the transfer is not automatically void because "noncompliance with the Act does not override the clear showing of a valid and complete transfer of ownership of an automobile." *Hudson Buick, Pontiac, GMC Truck Co. v. Gooch,* 7 S.W.3d 191, 197 (Tex.App.-Tyler 1999, pet. denied). In *Gooch,* the Tyler Court held that a non-compliant transfer, in which the buyer purchased a vehicle without a transfer of the certificate of title, is valid if the transfer does not defeat the purposes of the Act. *Id.* at 197–98. One pur-

pose of the Act is to "lessen and prevent theft of motor vehicles." *Id.* at 197. An additional purpose is to "lessen and prevent ... [the] sale of encumbered vehicles without disclosure of existing liens." *Id.;* TEX. TRANSP. CODE ANN. § 501.003(3) (Vernon 2007). When Cavazos sold the car to Avatar Trust, he provided a certified copy of the certificate of title which noted Chase's lien, but he also provided the forged letter purporting to release the lien. Because of the forged release, this transaction did not validly transfer title to Avatar Trust and defeated the Act's goal of disclosing existing liens.

the lien on January 15, 2008. Upon default, Chase was entitled to foreclose its lien and take possession of the vehicle. *See* TEX. BUS. & COM.CODE ANN. § 9.601(a)(1) (Vernon Supp.2009).

 The only element of conversion that the defendants disputed in the trial court was whether Valeri unlawfully exercised control over the vehicle to the exclusion of Chase's rights. The defendants contended that based on *Renteria*, Valeri had the best title to the vehicle, and that he was a buyer in the ordinary course of business who purchased the vehicle in good faith and without knowledge of Chase's lien. Wrongful intent is not an element of conversion—even innocent buyers of property may be liable. *Schwartz v. Pinnacle Commc'ns*, 944 S.W.2d 427, 432–33 (Tex.App.-Houston [14th Dist.] 1997, no pet.); *see also Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337, 343 (Tex.App.-Austin 2004, no pet.) ("It is well established under Texas law that acting with good faith or innocence does not constitute a defense to conversion."); *White–Sellie's Jewelry Co. v. Goodyear Tire & Rubber Co.*, 477 S.W.2d 658, 662 (Tex.Civ.App.-Houston [14th Dist.] 1972, no writ) ("The requisite intent [in a conversion action] is only one to assert a right in the property, and a wrongful intent is not required."). By purchasing the vehicle, financing it through U.S. Bank, and possessing it, Valeri asserted a right in the property. Because the chain of title to the vehicle included a forgery, neither Avatar Trust, nor NXCESS, nor Valeri had valid title to the vehicle. The summary judgment record establishes that Valeri assumed and exercised control over the vehicle to the exclusion of Chase's rights in the vehicle. Thus, the trial court did not err in ruling that Valeri converted the vehicle.

## Conclusion

We hold that Avatar Trust's original certificate of title was based upon a forged release of lien; accordingly, Avatar Trust did not transfer good title to NXCESS or Valeri, and neither party qualifies as a buyer in the ordinary course of business. We further hold that the trial court did not err in ruling that Chase established its conversion claim as a matter of law. We therefore affirm the judgment of the trial court.