

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00544-CV

Juan J. **VILLARREAL**,
Appellant

v.

Roberto **JIMENEZ**,
Appellee

From the 218th Judicial District Court, Frio County, Texas
Trial Court No. 12-10-00348CVF
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
            Rebeca C. Martinez, Justice
            Patricia O. Alvarez, Justice

Delivered and Filed:  July 6, 2016

AFFIRMED

Juan J. Villarreal appeals the trial court's judgment setting aside the transfer of a motor vehicle to him by Camilo Mendez and declaring the certificate of title issued to him to be void. Villarreal contends he was a bona fide purchaser for value and the Uniform Commercial Code governed the validity of his purchase of the vehicle as opposed to the Texas Certificate of Title Act.  We affirm the trial court's judgment.[1]

---

[1] On September 25, 2015, appellee Roberto Jimenez filed a motion to dismiss this appeal for lack of jurisdiction asserting Villarreal's notice of appeal was untimely filed.  By order dated December 4, 2015, this court denied Jimenez's motion, holding Villarreal's premature motion for reconsideration extended the appellate timetable.  In his

## BACKGROUND

On October 9, 2012, appellee Roberto Jimenez sued Villarreal and Mendez. Jimenez sued Mendez both individually and doing business as Camilo Mendez Auto Body and Paint. Jimenez asserted claims for fraud, conversion, and gross negligence. A bench trial was held on April 9, 2015.

Mendez is in the business of painting motor vehicles. Jimenez and Mendez entered into a verbal agreement that Mendez would paint Jimenez's 1973 Chevrolet Corvette in exchange for a motorcycle. The testimony of Jimenez and Mendez was conflicting as to whether Mendez took the Corvette and motorcycle with him or whether Jimenez subsequently dropped them off at Mendez's shop. The evidence was also conflicting regarding the initial date the Corvette was at Mendez's shop to begin painting. Jimenez testified Mendez took the Corvette and motorcycle to his shop in May or June of 2011. Mendez testified Jimenez brought the Corvette and motorcycle to his shop at the beginning of 2011; however, Mendez subsequently filed a mechanic's lien stating the Corvette was first presented for painting on August 8, 2011 which conflicts with Mendez's testimony that, by November of 2011, the Corvette had been at his shop for eight months. The August 8, 2011 date also appears on a purchase order detailing the work Mendez agreed to perform.

The evidence also was conflicting regarding the date Mendez completed painting the Corvette. Jimenez testified he never received notice that the paint job was complete until he received a notice of Mendez's intention to file a mechanic's lien dated November 14, 2011. Mendez testified he called Jimenez on numerous occasions after the paint job was complete; however, Jimenez started avoiding his phone calls. Although Mendez was in possession of the

---

brief filed on February 29, 2016, Jimenez again contends this court lacks jurisdiction to consider this appeal because Villarreal's prematurely filed motion for reconsideration did not extend the appellate deadlines. As this court held in our prior order, however, a prematurely filed motion for reconsideration extends the appellate timetable. *Padilla v. LaFrance*, 907 S.W.2d 454, 458-59 (Tex. 1995). Accordingly, we have jurisdiction to consider this appeal.

motorcycle he was to receive in exchange for the paint job, Jimenez had not provided him with title to the motorcycle. Mendez testified the paint job was completed by August of 2011; however, the mechanic's lien Mendez filed stated the work was completed on October 15, 2011.

Jimenez testified when he received Mendez's notice of intention to file mechanic's lien, he went to the bank and obtained a cashier's check in the amount of $1,500.[2] Jimenez testified this was the amount Mendez initially quoted for painting the Corvette before they agreed to exchange the paint job for the motorcycle. On November 21, 2011, Jimenez filed a claim in the justice court stating Mendez had his Corvette and two motorcycles (a 2001 Harley Davidson and a 1986 Kawasaki Voyager). Jimenez's petition further stated Mendez had "gone back on [their] original agreement" and now wanted $3,500 for the paint job. Mendez was served with the petition on November 29, 2011, and filed an answer. On December 16, 2011, the justice court sent notice of a hearing set for December 29, 2011.

On December 15, 2011, Mendez filed a mechanic's lien. As previously noted, the mechanic's lien stated Mendez received the Corvette on August 8, 2011 and completed the work on October 15, 2011. The mechanic's lien also stated the amount due was $3,500.00. Finally, the mechanic's lien stated a public sale was conducted on December 15, 2011. That same day, Mendez obtained a loan from a bank in the amount of $2,534.34, giving the bank a security interest in the Corvette, and also applied for a certificate of title for the Corvette noting the bank's lien. The Texas Department of Motor Vehicles ("Department") issued Mendez a certificate of title on December 27, 2011.

With regard to the purported public sale, Jimenez stated he never received notice of such a sale. In his testimony, Mendez also admitted no public sale occurred.

---

[2] A copy of the certified check was introduced as evidence.

On December 29, 2011, Jimenez and Mendez appeared before the justice court for the hearing. At the hearing, the judge noted the parties agreed Mendez would return the Corvette upon receipt of a signed title to the Harley Davidson motorcycle. The judge reset the case for January 10, 2012. Mendez did not appear on the reset date, and the justice court rendered a default judgment ordering that Jimenez recover the Corvette and both motorcycles from Mendez in addition to court costs. A writ of execution was issued on March 9, 2012. The writ was executed on March 26, 2012, and the constable was able to recover the two motorcycles; however, one or both motorcycles had been taken apart. The constable's return stated the Corvette had been sold and attached a title application receipt dated January 20, 2012, transferring title to the Corvette from Mendez to Villarreal.

Juan Villarreal testified he paid Mendez $5,000 cash for the Corvette. Villarreal stated he paid $3,500 for the Corvette, plus an additional $1,500 for Mendez to repaint the car. Villarreal owned a business in the same complex as Mendez's shop. Villarreal testified he had subsequently spent approximately $7,000 in additional repairs to the Corvette, including purchasing new tires and paying for brake work. Villarreal only produced approximately $1,000 in receipts, however, which did not include any receipts for new tires or brake work.

Mendez testified Villarreal paid him $3,500 cash for the Corvette but no additional amount to repaint the car.[3] Mendez was shown the application he and Villarreal signed to transfer the title which stated the sales price was $1,000. Mendez could not explain the reason the application showed only $1,000 as the payment. Mendez admitted he already had title in his name at the time of the hearing before the justice court. Mendez further admitted when the constable arrived to execute the writ, the Corvette was still in Mendez's shop.

---

[3] Mendez and his attorney did not arrive at the hearing until after Jimenez and Villarreal testified.

At the conclusion of the testimony and closing arguments, the trial court announced its ruling as follows:

> THE COURT: Res judicata was not pled, so that's not available for me to rule upon. Nor did Mr. Mendez file any sort of counterclaim against Mr. Jimenez for unjust enrichment or quantum meruit, so I'm left without the ability to rule upon that. Nor did Mr. Villarreal file any sort of cross-claim against Mr. Mendez for the value or for what he expended in the event that he's not awarded the Corvette. So all I'm really left with is who gets the Corvette. This case is not governed by the Business and Commerce Code. This case is governed by the Transportation Code and the Property Code. Looking at 501.074 of the Transportation Code it gives us guidance about how transfer of a vehicle by operation of law occurs and then you go to the Property Code for the mechanic's lien provisions as to how to perfect that and to obtain your title by operation of law. Then if you look at the face of the mechanic's lien, Plaintiff's Exhibit 1I, you see the defects; a number of defects that exist. One defect is that it claims to be a public sale, and we have Mr. Mendez categorically saying it was not a public sale. Also, there is a requirement that a work order, a signed work order must be submitted, and there is, I guess, a work order that was prepared by Mr. Mendez but it's not signed by Mr. [Jimenez] and in the absence of that there's a requirement that there be a court order establishing ownership. Also, the statutory lienholder, it's not even an affidavit because he didn't — there's no indication that it was sworn to. There may be more but then you look to 501.073 which says that if this Chapter is not complied with, being Chapter Five of the Transportation Code, then any sale is void. So this is a void sale that occurred to Mr. Villarreal, and I'm ordering that the documents and titles executed by Defendant Mendez, both to himself and to Defendant Villarreal are void and are of no effect and that ownership of the Corvette is established in the Plaintiff Mr. Jimenez.

The trial court subsequently signed a Judgment and Decree Setting Aside Certificates. In the judgment, the trial court finds Mendez "purportedly sold the vehicle to himself without proper compliance with the Texas Transportation Code, Chapter 501, and section 70.005 and 70.006 of the Texas Property Code." The judgment declares the transfers of the Corvette to Mendez and to Villarreal to be void. The judgment further declares the certificates of title issued to Mendez and Villarreal to be void. Finally, the judgment orders Villarreal to deliver possession of the Corvette to Jimenez.[4] Villarreal appeals.

---

[4] In his brief, Jimenez asserts a waiver argument based on Villarreal's failure to present an issue challenging the sufficiency of the evidence as it relates to the elements of the claims Jimenez asserted in his petition. However, the

## DISCUSSION

In his second issue, Villarreal contends the trial court erred in concluding the Texas Certificate of Title Act ("Act") governed the dispute instead of the Uniform Commercial Code which is codified in the Texas Business and Commerce Code ("Code"). As support for this contention, Villarreal cites section 501.005 of the Act which generally provides, "Chapters 1-9, Business & Commerce Code, control over a conflicting provision of this chapter." TEX. TRANSP. CODE ANN. § 501.005 (West 2013). Villarreal also cites a few cases in which courts have held the Code governed over the Act under the facts presented in those cases. *See Vibbert v. PAR, Inc.*, 224 S.W.3d 317, 324 (Tex. App.—El Paso 2006, no pet.) (holding section 2.401(b) of the Code trumps over sections 501.071(a) and 501.073 of the Act regarding when and how title transfers); *First Nat'l Bank of El Campo, Tex. v. Buss*, 143 S.W.3d 915, 922-24 (Tex. App.—Corpus Christi 2004, pet. denied) (holding Code provisions control in "a priority dispute between a floor-plan financier and individuals claiming to be buyers in the ordinary course").[5] Villarreal does not, however, discuss the specific provision of the Act referenced by the trial judge in announcing her ruling.

Under the facts of this case, Mendez asserted a statutory mechanic's lien against the Corvette. Such a lien is governed by Chapter 70 of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 70.001(a) (West Supp. 2015) (providing for a possessory lien in favor of a worker who by labor repairs a vehicle). Section 70.006 of the Property Code requires a holder of a possessory mechanic's lien on a motor vehicle subject to Chapter 501 of the Act to: (1) give written

---

trial court did not base its judgment on the sufficiency of the evidence as it related to Jimenez's claims. Instead, the trial court's judgment was based on the Texas Certificate of Title Act and the validity of title. Because Villarreal presents issues challenging the basis for the trial court's judgment, we reject Jimenez's waiver argument.

[5] We note a buyer in the ordinary course must purchase from a person "in the business of selling goods of that kind." TEX. BUS. & COM. CODE ANN. § 1.201(9) (West Supp. 2015). In this case, Mendez is not in the business of selling motor vehicles.

notice to the owner of the vehicle which notice is required to include a signed copy of the work order authorizing the repairs on the vehicle; and (2) file a copy of the notice and all information required by section 70.006 with the county tax assessor-collector's office not later than the 30th day after the date on which the charges accrued. *Id*. at § 70.006(a), (b-1)(4). After the owner receives notice, the owner has the right to obtain possession of the motor vehicle by paying the charges due to the holder of the lien before the 31st day after the date a copy of the notice is filed with the county tax-assessor collector's office. *Id*. at § 70.006(e). If the charges are not paid by the 31st day, the lienholder is entitled to sell the motor vehicle at a public sale and apply the proceeds to the charges. *Id*. at 70.006(f).

Once the foregoing foreclosure process has occurred under section 70.006 of the Property Code, section 501.074(c) of the Act governs the issuance of new title. *See* TEX. TRANSP. CODE ANN. § 501.074(c) (West 2013). Section 501.074(c) provides, in pertinent part, as follows:

> (c) If a constitutional or statutory lien is foreclosed, the department may issue a new title in the name of the purchaser at the foreclosure on receiving:
> (1) the affidavit of the lienholder of the fact of the creation of the lien and of the divestiture of title according to law; and
> (2) proof of notice as required by Sections 70.004 and 70.006, Property Code, ….

Importantly, for purposes of resolving the issue presented in this appeal, section 501.074(d) of the Act provides, "Notwithstanding the terms of Section 501.005, in the event of a conflict between this section and other law, this section controls." *Id*. at § 501.074(d).

As the trial court noted in its verbal ruling, the evidence established that Mendez failed to comply with section 70.006 in numerous respects. First, the notice Mendez sent to Jimenez did not include a signed copy of the work order authorizing the work on the Corvette. *See* TEX. PROP. CODE ANN. § 70.001(b-1)(4) (West Supp. 2015). Second, although Mendez filed a mechanic's lien with the county tax assessor-collector's office, the record does not establish Mendez filed a

copy of the notice he provided to Jimenez. *Id*. at § 70.006(a). Third, Mendez was required to file the notice with the county tax assessor-collector's office not later than the 30th day after the charges accrued; however, the mechanic's lien, which was filed on December 15, 2011, stated the work was completed on October 15, 2011, which was inconsistent with Mendez's testimony that the work was completed in August of 2011. *Id*. Regardless of whether the work was completed in August of 2011 or on October 15, 2011, the mechanic's lien was not filed within thirty days of those dates. Finally, the foreclosure had to be by public sale, but Mendez admitted no public sale occurred. *Id*. at § 70.006(f).

With regard to the certificate of title, therefore, Mendez's statutory lien was not properly foreclosed; therefore, the Department could not issue title in his name as the purchaser at a public foreclosure sale. *See* TEX. TRANSP. CODE ANN. § 501.074(c) (West 2013). In addition, the record does not contain an affidavit from Mendez as required by section 501.074(c) of the Act. *Id*. Finally, the record does not establish Mendez provided the Department with proof of the notice required by section 70.006. *Id*. Accordingly, because Mendez failed to comply with the requirements of section 501.074(c), Mendez's certificate of title was void. *See id.* at § 501.073 ("A sale made in violation of this chapter is void and title may not pass until the requirements of this chapter are satisfied."). And, since Mendez possessed only void title, even under the Uniform Commercial Code, he could only transfer void title to Villarreal because section 2.403(a) of the Code only allows a person with voidable title to transfer good title, not a person with void title.[6] *See Drake Ins. Co. v. King*, 606 S.W.2d 812, 817 (Tex. 1980) (noting where seller's attempted transfer of motor vehicle to purchaser was void, purchaser had no title to transfer to subsequent

---

[6] For this reason, Villarreal's argument that he was a bona fide purchaser for value in his first issue fails. Generally, a purchaser only acquires "all title which his transferor had or had power to transfer." TEX. BUS. & COM. CODE ANN. § 2.403(a) (West 2009). Since Mendez only had void title, Villarreal only acquired void title. A bona fide purchaser for value can obtain good title from a seller with voidable title, but not from a seller with void title. *Id*.

purchaser); *NXCESS Motor Cars, Inc. v. JPMorgan Chase Bank, N.A.*, 317 S.W.3d 462, 470 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding where seller in chain of title only held void title, all subsequent purchasers also received void title); TEX. BUS. & COM. CODE ANN. § 2.403(a) (West 2009). Therefore, the Act and the Code do not contain any conflict in this regard; however, even if they did, the trial court would not have erred in concluding the Act controls because, as previously noted, section 501.074(d) of the Act states, "Notwithstanding the terms of Section 501.005, in the event of a conflict between this section and other law, this section controls." TEX. TRANSP. CODE § 501.074(d).

## CONCLUSION

The trial court's judgment is affirmed.

Karen Angelini, Justice