Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
SANDRA and JOSEPH VIBBERT,                 )                  No. 08-05-00167-CV
)
                                    Appellants,                       )                             Appeal from
)
v.                                                                          )                 County Court at Law No. 7
)
PAR, INC.,                                                          )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 2003-1929)


O P I N I O N

            Sandra and Joseph Vibbert appeal from summary judgment granted in favor of PAR Inc. on
their suit for conversion. Finding no error, we affirm.
FACTUAL SUMMARY
            On June 6, 2001, the Vibberts purchased a 1989 Mercedes Benz from G.S. Motor Sports,
Inc.(G.S.) for $9,500. They traded Sandra’s 1998 Nissan Altima and G.S. gave them a trade-in
allowance of $10,000. G.S. agreed to pay the loan balance of $9,367.95 owed on the Altima to
Wells Fargo Bank (formerly Norwest Bank El Paso N.A.). The balance of the trade-in allowance,
$632.05, was applied to the purchase as a down-payment. A few days later, G.S. sold the Altima to
Michael and Rhonda Kuwamoto for $10,997.48. The Kuwamotos financed the purchase through
Zoom Lot Funding, an entity of Cygnet Dealer Finance. 
            Wells Fargo notified the Vibberts in July 2001 that it had not received a payment on the
Altima. Sandra began communicating with a Wells Fargo supervisor who advised her to contact
G.S. Sandra followed that advice and obtained a copy of a payoff check from Gary Swenson, the
owner of G. S. Motor Sports. As it turned out, the check bounced and G.S. did not pay off the
indebtedness. Wells Fargo continued to demand payment, but Sandra did not pay because she no
longer owned the car. The Vibberts filed suit in November 2001 against G.S. and owner Gary
Swenson alleging DTPA violations, fraud, and breach of contract. The record before us does not
reveal the posture of that lawsuit.
            On January 14, 2002, Cygnet contacted PAR to secure a duplicate title to the Altima. PAR
specializes in the repossession of vehicles on behalf of lien holders and its title department obtains
repossession titles, certified copies of titles, and duplicate titles for its customers. Cygnet provided
PAR with the Kuwamoto sales contract and other relevant documents indicating that G.S. had sold
the Altima to the Kuwamotos in June 2001 and that Zoom Lot Funding held the lien. Nothing in the
documents indicated that the Vibberts or Wells Fargo held any interest in the vehicle. PAR hired
C&M Title Services on January 15 to perform the necessary title work and forwarded the papers it
had received from Cygnet. C&M Title Services (C&M) was owned by Mary and Clint
Wennerstrom. PAR provided C&M with a limited power of attorney so that it could obtain the
duplicate title. Based on the documents it had been provided, PAR anticipated that C&M would
obtain a duplicate title reflecting the Kuwamotos as the owner and Zoom Lot Funding as the
lienholder. If a different lienholder than Zoom Lot funding appeared on the title, PAR expected
C&M to provide that information so steps could be taken to contact the lienholder and determine
whether it had a valid lien.
            On January 16, C&M filed an application for a certified copy of a Texas certificate of title
for the Altima. That title showed Sandra as the record owner and Norwest Bank El Paso as the
lienholder. C&M did not share this information with PAR. On February 11, C&M filed an
application for a Texas certificate of title in order to transfer title from Sandra to the Kuwamotos. 
Mrs. Wennerstrom denied signing Sandra’s name on the application. She also submitted a release
of lien on behalf of Norwest but she could not specifically recall whether it had been provided by
PAR with the other paperwork. The release was dated January 12, 2002 and it was purportedly
signed by Brenda Bodkin, a PAR supervisor, as agent for Norwest.


 Bodkin denied signing the
release of lien, and Mrs. Wennerstrom denied forging Bodkin’s signature. 
            The Vibberts then filed suit against PAR, alleging that it converted the vehicle by
fraudulently transferring the title to the Kuwamotos.


 PAR filed both traditional and no-evidence
motions for summary judgment which the trial court granted without specifying the precise basis for
its ruling. This appeal follows. 
CONVERSION
            The Vibberts bring three issues for review: (1) whether Sandra had an ownership interest in
or a right of possession to the Altima at the time of the conversion; (2) whether PAR performed an
act constituting conversion by directing that title be transferred from Sandra to the Kuwamotos; and
(3) whether there is clear and convincing evidence that PAR’s actions met the elements necessary
for imposition of exemplary damages. 
Standards of Review
            A no-evidence summary judgment is essentially a pretrial directed verdict, and a reviewing
court applies the same legal sufficiency standard. Wyatt v. Longoria, 33 S.W.3d 26, 31 (Tex.App.--El Paso 2000, no pet.). The party moving for summary judgment on this basis must specifically state
the elements as to which there is no evidence. Tex.R.Civ.P. 166a(i). The burden then shifts to the
non-movant to produce evidence raising a fact issue on the challenged elements. Id. When
reviewing a no-evidence summary judgment, we view the evidence in the light most favorable to the
non-movant and disregard all contrary evidence and inferences. Merrell Dow Pharmaceuticals, Inc.
v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). A no-evidence summary judgment is improperly
granted if the respondent counters with more than a scintilla of probative evidence to raise a genuine
issue of material fact. See Lampasas v. Spring Ctr., Inc., 988 S.W.2d 428, 432 (Tex.App.--Houston
[14th Dist.] 1999, no pet.); Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 70 (Tex.App.--Austin 1998,
no pet.). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than
create a mere surmise or suspicion. Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). 
More than a scintilla of evidence exists when the evidence rises to a level that would enable
reasonable, fair-minded persons to differ in their conclusions. Havner, 953 S.W.2d at 711. In a case
where the trial court’s judgment does not specify the ground or grounds relied upon for its ruling,
the summary judgment must be affirmed if any of the theories advanced is meritorious. Carr v.
Brasher, 776 S.W.2d 567, 569 (Tex. 1989).
            In a traditional summary judgment proceeding, the standard of review on appeal is whether
the successful movant at the trial level carried the burden of showing that there is no genuine issue
of material fact and that judgment should be granted as a matter of law. Lear Siegler, Inc. v. Perez,
819 S.W.2d 470, 471 (Tex. 1991); Duran v. Furr’s Supermarkets, Inc., 921 S.W.2d 778, 784
(Tex.App.--El Paso 1996, writ denied). The question on appeal is not whether the summary
judgment proof raises fact issues as to required elements of the movant’s cause or claim, but whether
the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material
fact as to one or more elements of the movant’s cause or claim. Gibbs v. General Motors Corp., 450
S.W.2d 827, 828 (Tex. 1970); Duran, 921 S.W.2d at 784. In resolving these issues, all evidence
favorable to the non-movant must be taken as true and all reasonable inferences, including any
doubts, must be resolved in the non-movant’s favor. Nixon v. Mr. Property Mgmt. Co., Inc., 690
S.W.2d 546, 548-49 (Tex. 1985); Duran, 921 S.W.2d at 784. A trial court properly grants summary
judgment in favor of a defendant if that party conclusively establishes all elements of an affirmative
defense, or conclusively negates at least one element of the plaintiff's claim. American Tobacco Co.,
Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).
Elements of Conversion
            Conversion is the unauthorized and wrongful assumption and exercise of dominion and
control over the personal property of another to the exclusion of, or inconsistent with, the owner’s
rights. Waisath v. Lack’s Stores, Inc., 474 S.W.2d 444, 447 (Tex. 1971); Smith v. Maximum Racing,
Inc., 136 S.W.3d 337, 341 (Tex.App.--Austin 2004, no pet.). To establish a claim for conversion
of personal property, a plaintiff must prove that: (1) the plaintiff owned or had legal possession of
the property or entitlement to possession; (2) the defendant unlawfully and without authorization
assumed and exercised dominion and control over the property to the exclusion of, or inconsistent
with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the
defendant refused to return the property. Smith, 136 S.W.3d at 341; Whitaker v. Bank of El Paso,
850 S.W.2d 757, 760 (Tex.App.--El Paso 1993, no writ). Wrongful intent is not an element of
conversion. Thomas v. McNair, 882 S.W.2d 870, 884 (Tex.App.--Corpus Christi 1994, no writ).
Ownership, Possession, or Right to Possession
            PAR sought both traditional and no-evidence summary judgments as to the first element of
the conversion action. It argued that under the Uniform Commercial Code, title to the Altima passed
to G.S. when Sandra physically delivered the vehicle in June 2001 and therefore, she did not own
or have a right to possession. The Vibberts countered that the sale of the Altima was void under the
Texas Certificate of Title Act because Sandra did not transfer the certificate of title. They also
claimed that the certificate of title showing Sandra as the record owner created a presumption of
ownership and a right of possession. 
            The name on the certificate of title is not conclusive of ownership. Tyler Car & Truck Center
v. Empire Fire & Marine Insurance Company, 2 S.W.3d 482, 485 (Tex.App.--Tyler 1999, pet.
denied); Minter v. Joplin, 535 S.W.2d 737, 738 (Tex.Civ.App.--Amarillo 1976, no writ). Evidence
of the name in which an automobile is registered raises only a presumption of ownership. A
presumption is not evidence and vanishes when positive evidence to the contrary is introduced. 
Tyler Car, 2 S.W.3d at 485; Minter, 535 S.W.2d at 739.
            The Legislature enacted the Texas Certificate of Title Act (the Act) in order to replace the
transfer of vehicles by bill of sale with transfer by certificate of title administered by a central state-wide agency. Drake Insurance Company v. King, 606 S.W.2d 812, 815 (Tex. 1980); First National
Bank of El Campo v. Buss, 143 S.W.3d 915, 919 (Tex.App.--Corpus Christi 2004, pet. denied). 
These provisions must be construed in light of the Act’s stated purpose to lessen and prevent: (1)
the theft of motor vehicles; (2) the importation into this State of and traffic in stolen vehicles; and
(3) the sale of an encumbered vehicle without disclosure to the purchaser of a lien secured by the
vehicle. Tex.Transp. Code Ann. § 501.003 (Vernon 1999); First National Bank, 143 S.W.3d at
919. Its purpose is not to prevent sales and transfers of interests in motor vehicles. First National
Bank, 143 S.W.3d at 919; Gramercy Insurance Co. v. Arcadia Fin., Ltd., 32 S.W.3d 402, 408
(Tex.App.--Houston [14th Dist.] 2000, no pet.).
            At the time of the transaction between the Vibberts and G.S., Section 501.071(a) of the Texas
Transportation Code provided that:
A motor vehicle may not be the subject of a subsequent sale


 unless the owner



designated in the certificate of title transfers the certificate of title at the time of the
sale.

Tex.Transp.Code Ann. § 501.071(a). A sale made in violation of Chapter 501 is void and title may
not pass until the requirements of the chapter are satisfied. Tex.Transp.Code Ann. § 501.073
(Vernon 1999). But the Act additionally provides that Chapters 1 through 9 of the Texas Business
and Commerce Code control over a conflicting provision of Chapter 501. Tex.Transp.Code Ann.
§ 501.005.
            Under the Uniform Commercial Code, a “sale” consists of the “passing of title from the seller
to the buyer for a price (Section 2.401).” Tex.Bus.&Comm.Code Ann. § 2.106(a)(Vernon 1994). 
Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller
completes her performance with reference to the physical delivery of the goods, despite any
reservation of a security interest and even though a document of title is to be delivered at a different
time or place. Tex.Bus.&Comm.Code Ann. § 2.401(b)(Vernon Supp. 2005). Motor vehicles are
included in the UCC’s definition of “goods.” Tex.Bus.&Comm.Code Ann. § 2.105(a); First
National Bank, 143 S.W.3d at 920; Hudson Buick, Pontiac, GMC Truck Co. v. Gooch, 7 S.W.3d
191, 197 (Tex.App.--Tyler 1999, pet. denied). Under the UCC, title to a motor vehicle passes to the
buyer upon delivery or possession even though a certificate of title will be delivered later and the
names on the certificate of title are not changed. See First National Bank, 143 S.W.3d at 920;
Hudson Buick, 7 S.W.3d at 197-98; Tyler Car & Truck Center v. Empire Fire & Marine Insurance
Company, 2 S.W.3d 482, 485 (Tex.App.--Tyler 1999, pet. denied). Non-compliance with the Texas
Certificate of Title Act does not override a clear showing of valid and complete transfer of
ownership. First National Bank, 143 S.W.3d at 919; Gramercy Insurance, 32 S.W.3d at 408;
Najarian v. David Taylor Cadillac, 705 S.W.2d 809, 812 (Tex.App.--Houston [1st Dist.] 1986, no
writ). The sale of a vehicle without the transfer of a certificate of title is valid as between the parties
when the purposes of the Certificate of Title Act are not defeated, although the Act declares that the
non-transfer of such certificates renders the sale void. First National Bank, 143 S.W.3d at 919; see
Gramercy Insurance, 32 S.W.3d at 408.
            At oral argument, the Vibberts cited Gallas v. Car Biz, Inc., 914 S.W.2d 592 (Tex.App.--Dallas 1995, writ denied) in support of their argument that a sale of a motor vehicle made in
violation of the Texas Certificate of Title Act is void. Car Biz, a licensed car dealership, sold a
vehicle it had just purchased to Stamper d/b/a Heart Attack Autos, another licensed car dealer. Title
had not been transferred to Car Biz at the time of the transaction. Stamper gave Car Biz a three-day
sight draft for the purchase price and Car Biz permitted Stamper to take possession of the vehicle. 
Car Biz began the title process but did not give Stamper the certificate of title. Stamper subsequently
sold the vehicle to Gallas. Stamper gave Gallas possession of the vehicle but did not give him
certificate of title. Gallas filled out an application for title and relied on Stamper’s representation
that title was “in transit or in transfer” and that all paper work would be sent to Austin where title
would be transferred into Gallas’ name. Id. at 593. Before the title process was completed, Car Biz
learned that Stamper’s draft was no good. It also reported the vehicle as stolen and Gallas was
subsequently arrested for driving a stolen vehicle. Car Biz then applied for and received an original
certificate of title naming it the owner.
            Gallas sued Car Biz seeking a declaratory judgment that he was the owner and sought
specific performance in the form of title transfer. Gallas additionally alleged conversion and
estoppel causes of action. Car Biz counterclaimed seeking a declaration of ownership and specific
performance of possession of the vehicle. It also alleged conversion and sought damages for the loss
of the vehicle. A jury returned a verdict in favor of Gallas but the trial court granted judgment non
obstante veredicto in favor of Car Biz. It entered a judgment declaring that Car Biz was the owner
and ordered Gallas to deliver the vehicle.
            In its motion for judgment n.o.v., Car Biz complained that the evidence conclusively
established that Gallas purchased the vehicle from a third party, Stamper, who did not have and
could not pass “good title” pursuant to the Certificate of Title Act. Car Biz apparently relied on
former Tex.Rev.Civ.Stat. art. 6687-1 §§ 33 and 53. Id. at 594. Former Article 6687-1, § 33



provided, in relevant part, that:
No motor vehicle may be disposed of at a subsequent sale unless the owner
designated in the certificate of title transfers the certificate of title, at the time the
motor vehicle is transferred, on a form prescribed by the Department . . . . No title
to any motor vehicle shall pass or vest until the transfer is so executed. 

Id. at 594 n.2. Article 6687-1, § 53


 provided that: All sales made in violation of this Act shall be
void and no title shall pass until the provisions of this Act have been complied with. Id. at 594 n.3.
            Claiming that disposition of the case was controlled by Section 2.403(b) of the UCC,


 Gallas
argued that Car Biz’s entrustment of the vehicle to Stamper gave him the power to transfer all rights
in the vehicle to Gallas. Gallas, 914 S.W.2d at 594. The majority first faulted the dissent for
considering Gallas’ argument that the UCC controlled in the event of a conflict with the Certificate
of Title Act since it was not properly briefed. Gallas, 914 S.W.2d at 594 n.5. It then concluded that
the sale from Car Biz to Stamper was void because Car Biz did not have a certificate of title at the
time it sold the vehicle as required by the Act. Therefore, the sale from Stamper to Gallas did not
pass title. Gallas, 914 S.W.2d at 595, citing Article 6687-1, § 53. In its analysis, the majority
referenced two earlier opinions which, “after harmonizing the respective provisions,” held that the
Act controls transactions involving the sale of motor vehicles without a proper transfer of the
certificate of title. Id., citing Morey v. Page, 802 S.W.2d 779, 783-84 (Tex.App.--Dallas 1990, no
writ) and Pfluger v. Colquitt, 620 S.W.2d 739, 741-42 (Tex.Civ.App.--Dallas 1981, writ ref’d n.r.e.). 
“This interpretation gives meaning to both statutes and obviates any necessity to resort to section 65
of the Act to resolve any apparent conflict.” Gallas, 914 S.W.2d at 595, citing Pfluger, 620 S.W.2d
at 742. 
            We find ourselves in agreement with the dissent in Gallas and the concurrence in Pfluger. 
“[I]f the same factual transaction can harvest different results under different statutes, the statutes
are in conflict.” Gallas, 914 S.W.2d at 599 (Wright, J., dissenting), citing Pfluger, 620 S.W.2d at
747 (Stephens, J., concurring). “A statutory interpretation which attempts to harmonize these
provisions necessarily admits there is a conflict between them.” Id.
            And so we conclude that there is a conflict between Section 2.401(b) of the UCC and
Sections 501.071(a) and 501.073 of the Act regarding when and how title transfers. By express
language in the Act, the UCC trumps. The summary judgment evidence conclusively established
that Sandra transferred her ownership interest in the Altima to G.S. when she purchased the
Mercedes Benz. Her failure to transfer the certificate of title to G.S. did not void the sale. Because
the Vibberts presented no evidence that they had an ownership interest in or a right to immediate
possession of the Altima, the trial court did not err in granting summary judgment in favor of PAR. 
For these reasons, Issue One is overruled. Given our resolution of Issue One, it is unnecessary to
address the remaining issues. We affirm the judgment of the trial court.


March 23, 2006                                                           
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.