Opinion issued May 20, 2010

                                                                        

 

 

 

 

 



 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00018-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NXCESS MOTOR CARS, INC., Appellant

 

V.

 

JPMORGAN CHASE BANK, N.A., Appellee

 

 



On Appeal from the County Civil Court at Law No. 4

Harris County, Texas

Trial Court Cause No. 917204

 

 



OPINION ON REHEARING

          This
is a suit to resolve the title to a Mercedes S550 and a lien against that
title.  The trial court granted summary
judgment to the lienholder, JPMorgan Chase Bank, N.A. (Chase), on its
conversion claims against Xavier Valeri and US Bank, N.A, and severed this
judgment from the cause.  Valeri and US
Bank both had brought third-party claims against NXCESS Motor Cars, Inc.
(NXCESS), for breach of warranty and breach of contract.  Concerned that the trial court’s summary
judgment rulings are dispositive of the claims against it, NXCESS appeals the
trial court’s order granting Chase’s motion for summary judgment.  NXCESS contends that the trial court erred by
(1) failing to find that NXCESS and Valeri were buyers in the ordinary
course, (2) failing to find that the Texas Certificate of Title Act conflicted
with the Texas Business and Commerce Code, (3) failing to find that the
Code preempts the Act, and (4) finding Valeri liable for conversion.  Chase moves to dismiss the appeal for lack of
standing.  We grant rehearing, withdraw
our opinion and judgment dated February 18, 2010, and issue this opinion in its
stead to address two arguments NXCESS advances in its motion.  Our disposition of the case is
unchanged.  We conclude that NXCESS has
standing to appeal the judgment, but that the trial court’s rulings were
proper.  We affirm.

Background

In June 2007, James Cavazos purchased
a new Mercedes S550 from Mercedes-Benz of Sugar Land and gave Chase a purchase
money security interest in the vehicle.  The
Texas Department of Transportation (TxDOT) recorded Chase’s lien on the
original certificate of title.  After
making only three payments, Cavazos forged a release of the lien against the
title and applied for a certified copy of the original certificate of title.  In reliance on the certified copy and the
forged release letter, the Avatar-Foundation Trust (Avatar Trust) purchased the
vehicle from Cavazos and signed the “assignment of title” section on the
reverse of the certified copy of the title. 
Avatar Trust then applied for an original certificate of title to the
vehicle, submitting the certified copy and forged release letter with its
application.

TxDOT then issued a second “original
certificate” of title, which listed Avatar Trust as the owner and indicated
that no third parties held any liens on the vehicle.  Avatar Trust presented this original
certificate of title to NXCESS in February 2008.  According to NXCESS, it “performed the usual
and customary due diligence to determine good, clean, clear title,” and it did
not discover Chase’s lien on the vehicle prior to purchase.

Shortly after NXCESS purchased the
vehicle from Avatar Trust, Valeri purchased the vehicle from NXCESS and granted
a purchase money security interest to US Bank. 
At this time, NXCESS and US Bank entered into an “indirect dealer
agreement,” in which US Bank purchased Valeri’s retail installment contract
with NXCESS and NXCESS warranted that title to the vehicle was free of all
liens, encumbrances, claims, and defenses. 
After Valeri’s purchase, TxDOT issued an original certificate of title
which listed Valeri as the owner and US Bank as the sole lienholder.

Chase sued Cavazos for fraud and
conversion and sued TxDOT, Valeri, and US Bank solely for conversion.  Chase sought the balance of its loan to
Cavazos, possession of the Mercedes, and declarations that Chase’s lien is
superior to all other liens and any titles issued after the initial sale to
Cavazos are void.  Chase then moved for traditional
summary judgment against Cavazos, Valeri, and US Bank, arguing that the summary
judgment evidence entitled Chase to judgment as a matter of law on its
conversion claim.  Valeri, US Bank, and
NXCESS responded to Chase’s motion, contending that no conversion occurred
because both NXCESS and Valeri were buyers in the ordinary course of business
and took title to the Mercedes free of Chase’s lien.

Though NXCESS responded to the motion
for summary judgment, Chase asserted no direct claim against it.  Valeri, however, had sued NXCESS for breach
of warranty and for violations of the Deceptive Trade Practices Act, and US
Bank had sued it for breach of contract and breach of warranty.  US Bank, in its original cross claim against NXCESS,
pleaded:

In addition, should JPMorgan Chase prevail on its
claim to invalidate US Bank’s lien, additional warranty violations would be
triggered regarding NXcess’s obligation to assign the Contract and Vehicle
title free of encumbrances and to obtain a first priority security interest in
the Vehicle in favor of US Bank.  In the
event of a finding in favor of Plaintiff JPMorgan Chase on its lien claim,
NXcess is liable to US Bank for the amounts identified above.

 

The trial court granted summary judgment
to Chase against Cavazos, Valeri, and US Bank. 
The trial court authorized Chase to foreclose its lien, ordered Cavazos
to pay the remaining $96,941 on his loan from Chase, ordered Valeri to turn
over possession of the Mercedes to Chase, declared that Chase’s lien is
superior to all other claims and liens, and ordered TxDOT to void the title
issued to Valeri and all certificates of title issued after July 3, 2007.  The trial court then severed the summary
judgment order from the remaining claims in the case.  The trial court’s order did not adjudicate
the claims against NXCESS.

Valeri complied with the judgment by
turning over possession of the Mercedes to Chase, which Chase then sold to
satisfy its lien.  NXCESS appeals the
summary judgment order.

Discussion

Appellate Jurisdiction

          We
first examine whether we have jurisdiction over the appeal.  See
Smith v. Houston Lighting & Power Co., 7 S.W.3d 287,
288 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (citing
Tex. Ass’n of Bus. v. Tex. Air Control
Bd., 852 S.W.2d 440, 443 (Tex. 1993)). 
Chase moves to dismiss the appeal, contending that NXCESS lacks standing
to prosecute it.  Chase never asserted
any claims against NXCESS in the trial court, which became a party to the suit
only after Valeri and US Bank asserted third-party claims against it.[1]

          Generally,
only parties of record may appeal a final judgment.  Motor
Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass’n, 1 S.W.3d 108, 110 (Tex. 1999) (per curiam).  To be entitled to appellate review, the party
of record’s own interests must also be prejudiced by the trial court’s
decision.  Buchele v. Woods, 528 S.W.2d 95, 98
(Tex. Civ. App.—Tyler 1975, no writ); Menetti
v. Chavers, 974 S.W.2d 168, 171 (Tex. App.—San Antonio 1998, no pet.).  NXCESS appeared in the case by filing its
answer to Valeri’s third-party petition in June 2008, four months before the
trial court granted Chase’s motions for summary judgment.  Although NXCESS was not a party to the
summary judgment proceedings on Chase’s claims, NXCESS was a party of record.

          NXCESS
also demonstrates that the judgment on appeal prejudices its interests.  In its order granting Chase’s motions for summary
judgment, the trial court ruled that (1) Valeri must turn over possession of
the vehicle to Chase; (2) Chase’s lien was superior to any claims by Valeri and
US Bank; (3) Chase’s title was superior to all titles issued subsequent to the
initial title to Cavazos; and (4) TxDOT must void and destroy all titles issued
after the initial title.  As NXCESS
contends, this ruling voided the contracts NXCESS had with Valeri and US Bank
and subjected NXCESS to liability for breach of warranty and breach of
contract.  Shortly after the trial court
severed Chase’s claims, US Bank moved for summary judgment on its breach of warranty
claim against NXCESS.  US Bank stated:

The Court specifically ruled as a matter of law, in
granting [Chase’s] MSJ, that the title transferred to US Bank by Nxcess was
“void;” that [Chase’s] lien was “superior to any claim
of . . .US Bank . . . ”; and that TXDOT
should “void and destroy” the title issued to US Bank on the vehicle.  US Bank is, therefore; entitled to summary
judgment that Nxcess breached multiple representations/warranties to US Bank
under the Agreement with respect to the Valeri contract . . . .

 

The trial court agreed with US Bank
and rendered judgment against NXCESS.  We
hold that the trial court’s summary judgment order prejudiced the interests of
NXCESS, a party of record, and thus NXCESS has standing to appeal.  We deny Chase’s motion to dismiss for lack of
jurisdiction.

 

Standard of Review

          We
review de novo the trial court’s grant of a motion for summary judgment.  Provident Life & Accid. Ins. Co. v. Knott,
128 S.W.3d 211, 215–16 (Tex. 2003).  For the trial court to properly grant a
traditional motion for summary judgment, the movant must establish that there
is no genuine issue as to any material fact and the movant is thus entitled to
judgment as a matter of law.  Tex. R. Civ. P. 166a(c).  When a plaintiff moves for summary judgment
on its own claim, the plaintiff must conclusively prove all essential elements
of its cause of action as a matter of law. 
City of Houston
v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  A genuine issue of material fact exists if
the non-movant produces more than a scintilla of probative evidence regarding
the challenged element.  See Ford Motor Co. v. Ridgway, 135
S.W.3d 598, 600 (Tex. 2004); see also Forbes
Inc. v. Granada Bioscis., Inc., 124 S.W.3d 167, 172 (Tex. 2003) (“More than
a scintilla of evidence exists if it would allow reasonable and fair minded
people to differ in their conclusions.”). 
We examine the evidence in the light most favorable to the non-movant
and we indulge all reasonable inferences and resolve all doubts in the non-movant’s
favor.  See Goodyear Tire & Rubber Co. v. Mayes,
236 S.W.3d 754, 756 (Tex. 2007) (per curiam).

 

Buyers in the Ordinary Course of Business

          In
its first issue, NXCESS contends the trial court erred by failing to find that
it and Valeri qualified as buyers in the ordinary course of business.  The Texas Business and Commerce Code, which
contains Texas’ version of the Uniform Commercial Code, provides that title to
goods, including motor vehicles, passes to the buyer at the time and place the
seller completes performance regarding the physical delivery of the goods, and title
passes despite the reservation of a security interest and despite the delivery
of a title document at a later time.  See Tex.
Bus. & Com. Code Ann. § 2.401(b) (Vernon 2009); see also Vibbert v. PAR, Inc., 224
S.W.3d 317, 322 (Tex. App.—El Paso 2006, no pet.) (“Motor vehicles are included
in the UCC’s definition of ‘goods.’”).  A
“buyer in the ordinary course of business” may take the goods free of a security
interest created by the buyer’s seller, even if that security interest is
perfected and the buyer is aware of the interest at the time of purchase.  Tex.
Bus. & Com. Code Ann.
§ 9.320(a) (Vernon 2002).  To qualify as a buyer in the ordinary course
of business, the buyer must “buy[] goods in good
faith, without knowledge that the sale violates the rights of another person in
the goods, and in the ordinary course from a
person . . . in the business of selling goods of that
kind.”  Id. § 1.201(9) (Vernon 2009).  NXCESS relies on these provisions to assert
that it is entitled to the Mercedes, regardless of any defect in the title.

          The
Texas Supreme Court has previously held, however, that a forged certificate of
title passes no title to the vehicle.  See Drake Ins. Co. v. King,
606 S.W.2d 812, 817 (Tex. 1980). 
The Austin Court of Appeals has extended this holding to include
situations in which the certificate of title itself is not forged, but a
release of lien, on which the certificate of title is based, is forged.  See Lee
v. The Bank, N.A., 23 S.W.3d
129, 131 (Tex. App.—Austin 2000, no pet.).  In Lee,
the original purchaser of the vehicle obtained a certified copy of the
certificate of title and forged a letter from The Bank stating that its lien
had been released.  Id. at 130.  The certified copy, which reflected The
Bank’s lien, was assigned to two dealers prior to Lee.  Lee, in reliance on the forged release,
applied for an original certificate of title and stated on his application that
no liens existed and the evidence of ownership was a “certified copy [of a] Texas
title.”  Id.  TxDOT issued an original
certificate of title to Lee that did not indicate any lienholders.  Id. at 130–31.  The
Austin Court of Appeals held that Lee did not defeat The Bank’s security
interest because “the buyer acquires no title when any link in his chain of
title is forged.”  Id. at 131.  Hence, even though the certificate of title
itself was not a forgery, “a forged document on which a certificate of title is
based voids that title.”  Id.; see
also Dublin Nat’l Bank v. Chastain, 167 S.W.2d 795, 797 (Tex. Civ.
App.—Eastland 1942, writ ref’d) (“Proof of the forgery of a link of title is
tantamount to proof that the claimant of such title has none, or, in other
words that he is not the owner of the property.”).

          In
this case, Cavazos applied for and received a certified copy of the certificate
of title, which noted Chase’s lien.  Cavazos
then assigned this certified copy and gave his forged release of lien to Avatar
Trust.  In reliance on these documents,
Avatar Trust applied for an original certificate of title, stating that “no
liens existed” and the ownership evidence is a “certified copy [of a] Texas
title.”  Although none of the
certificates of title involved in this chain of transactions are forgeries, the
release of lien was.  Following Lee, we hold that Avatar Trust’s
certificate of title is void because it obtained it using a forged release of
lien.  Avatar Trust never acquired a
title to the Mercedes.  See Lee, 23 S.W.3d at
131.  Avatar Trust thus had no
title which it could pass on to NXCESS, and NXCESS had no title which it could
pass on to Valeri.  See Tex. Bus. & Com.
Code Ann. § 2.403(a) (Vernon 2009) (“A purchaser of goods acquires
all title which his transferor had or had power to transfer . . . .”).

          NXCESS
contends that Lee is inapplicable to
this case because Lee relied on a certified copy of a certificate of title, and
thus could not be a buyer in the ordinary course, whereas NXCESS and Valeri
both relied on an original certificate of title.  We disagree. 
Lee’s analogue in this case is neither NXCESS nor Valeri, but is instead
Avatar Trust, which relied on a certified copy of the certificate of title and
a forged release of lien in purchasing the Mercedes from Cavazos.  Just as the forged release of lien voided
Lee’s certificate of title, Cavazos’ forged release of lien voided the
certificate of title of Avatar Trust.  None
of the subsequent purchasers took valid title to the car.  See Lee,
23 S.W.3d at 131.

          NXCESS
further contends that Cavazos’ fraudulent conduct does not disturb it and
Valeri’s status as buyers in the ordinary course, arguing that Avatar Trust had
voidable title, instead of void title, and persons with voidable title can transfer
good title to a good-faith purchaser for value. 
See Tex. Bus. & Com. Code Ann. § 2.403(a); see also Kotis v. Nowlin Jewelry, Inc.,
844 S.W.2d 920, 923 (Tex. App.—Houston [14th Dist.] 1992, no writ).  Section 2.403(a) specifies that a purchaser
obtains voidable title if the goods are delivered through a transaction of
purchase even if the delivery “was procured through fraud punishable as
larcenous under criminal law.”  Tex. Bus. & Com. Code
Ann. § 2.403(a).  In Kotis,
Sitton purchased a watch from Nowlin Jewelry with a forged check and then sold
the watch to Kotis, who asserted that he was a good-faith purchaser.  Kotis,
844 S.W.2d at 921–22. 
In determining whether Sitton had voidable title, and the ability to
transfer good title to Kotis, the Fourteenth Court of Appeals distinguished
between a thief, who wrongfully takes goods against the will of the owner and
has void title, and a swindler, who fraudulently induces the owner to deliver
goods voluntarily and has voidable title. 
See id. at
922–23.  Because Sitton did not obtain
the watch against Nowlin Jewelry’s will, but instead used a forged check to
fraudulently induce Nowlin Jewelry into delivering the watch, Sitton received
voidable title and could pass good title to Kotis, if Kotis qualified as a
good-faith purchaser.  Id. 
The Fourteenth Court noted, however, that section 2.403(a)(4) only applies to “cases involving acts fraudulent to the
seller such as where the seller delivers the goods in return for a forged
check.”  Id. at 923.

In contrast to Kotis, in this case, the seller of the vehicle, Cavazos, committed
the fraud by forging the release of lien and giving it to Avatar Trust.  Avatar Trust did not fraudulently induce
Cavazos to sell the vehicle.  As a result,
Avatar Trust did not obtain voidable title to the car and could not transfer
good title to NXCESS under section 2.403(a).[2]  When Avatar Trust used Cavazos’ forged
release of lien to obtain an original certificate of title, the forgery voided
Avatar Trust’s certificate of title.  See Lee, 23 S.W.3d at 131; cf. Dyson Descendant Corp. v. Sonat
Exploration Co., 861 S.W.2d 942, 947 (Tex. App.—Houston [1st Dist.] 1993,
no writ) (“A forged deed is void ab initio. . . . No person
can be an innocent purchaser of land where one of the links in the chain of
title is a forgery.”); Kirkpatrick Joint
Venture v. Loots, 826 S.W.2d 205, 210 (Tex. App.—Fort Worth 1992, writ
denied) (“The protection usually afforded to a bona fide purchaser for value
without notice does not apply when such purchaser’s claim is dependent upon a
forged instrument. . . . A void instrument passes no title,
and the mere fact that the grantee-mortgagee is an innocent purchaser makes no
difference.”).  Because Avatar Trust
possessed void, and not voidable, title, it could not transfer valid title to
NXCESS.

          NXCESS
relies on the Corpus Christi Court of Appeals’ decision in South Texas Bank v. Renteria for the proposition that it and Valeri
have the “best title,” and thus are buyers in the ordinary course, because they
took physical possession of the Mercedes and their claim derives from an
original certificate of title.  523 S.W.2d 780, 786 (Tex. Civ. App.—Corpus Christi 1975, no writ).  In Renteria,
the original owner of the vehicle obtained a certified copy of the certificate
of title, and assigned that title to his employer in exchange for a loan, but
retained possession of the vehicle.  Id. at 782–83.  The employer received a new original
certificate of title from TxDOT.  Id. at 783.  The owner then traded the vehicle to the
original dealership, and assigned his original certificate of title to the
dealer, who then sold the vehicle to Renteria. 
Id.  In the ensuing title dispute between the
employer’s lender and Renteria, the Corpus Christi court held that because
Renteria had physical possession of the vehicle and an original certificate of
title, instead of a certified copy, he had superior title to the vehicle.  Id. at 786.

Renteria is
distinguishable.  We first note that
Chase and NXCESS both claim superiority of title based upon an original, and
not a certified, certificate of title. 
Avatar Trust assigned its original certificate, with no lien noted, to
NXCESS, and Chase retained the first original certificate from Mercedes-Benz of
Sugar Land to Cavazos, with Chase noted as the first lienholder.  Second, in Renteria, none of the certificates of title or accompanying release
of lien documents involved forgeries.  Here,
even though NXCESS took physical possession of the Mercedes as well as an
original certificate of title assigned from Avatar Trust, the forged release of
lien, upon which this certificate was based, voided Avatar Trust’s certificate
of title.  Under these facts, NXCESS and
Valeri cannot have the “best title” to the vehicle.  The forged release of lien,
which forms the basis for Avatar Trust’s certificate of title, voids that title
and all subsequent certificates of title.  Thus, the trial court properly rejected NXCESS’s
defense that it and Valeri are buyers in the ordinary course of business.

Conflict Between the Certificate of Title Act
and the Code

          In
its second and third issues, NXCESS contends that the trial court erred by
failing to find that the Certificate of Title Act conflicts with the Business
and Commerce Code and by failing to preempt application of the Act in favor of
the Code.  Chapter 501 of the
Transportation Code encompasses the Texas Certificate of Title Act, and section
501.005 states that “[c]hapters 1-9, Business & Commerce Code, control over
a conflicting provision of this chapter.” 
Tex. Transp.
Code Ann. § 501.005 (Vernon 2007).  If the same factual situation “can harvest
different results under different statutes, the statutes are in conflict.”  Vibbert,
224 S.W.3d at 324. 
Courts have previously held that, for example, section 2.401(b) of the
Code and sections 501.071(a) and 501.073 of the Act conflict regarding when and
how title to vehicles transfers, and therefore under section 501.005 of the
Act, section 2.401 of the Code trumps.  See id.; First Nat’l Bank v. Buss, 143 S.W.3d 915, 923–24 (Tex. App.—Corpus
Christi 2004, pet. denied).

          In
this case, NXCESS contends that section 501.134(c) of the Act, relied upon by
Chase, conflicts with section 2.403 of the Code, and therefore section 2.403
prevails.  Section 501.134(c) provides that,
when TxDOT issues a certified copy of the title, “[a] subsequent purchaser or
lienholder of the vehicle only acquires the rights, title, or interest in the
vehicle held by the holder of the certified copy.”  Tex. Transp. Code Ann.
§ 501.134(c) (Vernon 2007).  Section 2.403 states that “[a] purchaser of
goods acquires all title which his transferor had or had power to transfer . . . . A person with voidable title has power to transfer a
good title to a good faith purchaser for value.”  Tex.
Bus. & Com. Code Ann. § 2.403(a) (emphasis added).  Both of these statutes essentially state that
a subsequent purchaser cannot acquire greater rights and title than their
transferor has, although section 2.403 creates an exception when a person with
voidable title transfers the goods to a good-faith purchaser for value:  the purchaser receives good title.  See id.

The exception, however, is not
applicable here.  Upon purchasing the Mercedes
from Cavazos, Avatar Trust obtained the same rights and title as Cavazos:  ownership subject to Chase’s perfected
lien.  The forged letter of release voided
the original certificate of title TxDOT subsequently issued to Avatar
Trust.  See Lee, 23 S.W.3d at 131.  Avatar Trust held void title, not voidable
title, and thus had no good title to transfer. 
Regardless of whether the Certificate of Title Act or the Business and
Commerce Code govern, Avatar Trust and all subsequent purchasers received void
title to the vehicle due to the forgery in the chain of title.[3]  We hold that the trial court did not err in
ruling that the Act and the Code do not conflict so as to require that the Act be
preempted in favor of the Code.

Valeri’s Liability for Conversion

          NXCESS
further contends that Valeri was a buyer in the ordinary course who purchased the vehicle in good faith and without
knowledge of Chase’s lien, and thus the trial court erred in ruling that Valeri
converted the vehicle.  To be entitled to
summary judgment on its claim for conversion, Chase must establish, as a matter
of law, that (1) Chase owned or had possession of the property or entitlement
to possession; (2) Valeri unlawfully and without authorization assumed and
exercised control over the property to the exclusion of, or inconsistent with,
Chase’s rights as an owner; (3) Chase demanded return of the property; and (4)
Valeri refused to return the property.  Ashdon, Inc. d/b/a Impression
Bridal v. Gary Brown & Assocs., Inc., 260 S.W.3d 101, 116 (Tex.
App.—Houston [1st Dist.] 2008, no pet.). 
As summary judgment evidence, Chase attached the account information for
Cavazos, indicating that he defaulted on the lien on January 15, 2008.  Upon default, Chase was entitled to foreclose
its lien and take possession of the vehicle. 
See Tex. Bus. & Com. Code Ann. § 9.601(a)(1) (Vernon Supp. 2009).

          The
only element of conversion that the defendants disputed in the trial court was
whether Valeri unlawfully exercised control over the vehicle to the exclusion
of Chase’s rights.  The defendants
contended that based on Renteria,
Valeri had the best title to the vehicle, and that he was a buyer in the ordinary
course of business who purchased the vehicle in good faith and without
knowledge of Chase’s lien.  Wrongful
intent is not an element of conversion—even innocent buyers of property may be
liable.  Schwartz v. Pinnacle Commc’ns, 944 S.W.2d 427, 432–33 (Tex.
App.—Houston [14th Dist.] 1997, no pet.); see
also Smith v. Maximum Racing, Inc., 136 S.W.3d 337, 343 (Tex. App.—Austin
2004, no pet.) (“It is well established under Texas law that acting with good
faith or innocence does not constitute a defense to conversion.”); White-Sellie’s Jewelry Co. v. Goodyear Tire
& Rubber Co., 477 S.W.2d 658, 662 (Tex. Civ. App.—Houston [14th Dist.]
1972, no writ) (“The requisite intent [in a conversion action] is only one to
assert a right in the property, and a wrongful intent is not required.”).  By purchasing the vehicle, financing it
through US Bank, and possessing it, Valeri asserted a right in the
property.  Because the chain of title to
the vehicle included a forgery, neither Avatar Trust, nor NXCESS, nor Valeri had
valid title to the vehicle.  The summary
judgment record establishes that Valeri assumed and exercised control over the
vehicle to the exclusion of Chase’s rights in the vehicle.  Thus, the trial court did not err in ruling
that Valeri converted the vehicle.




Conclusion

We hold that Avatar Trust’s original
certificate of title was based upon a forged release of lien; accordingly, Avatar
Trust did not transfer good title to NXCESS or Valeri, and neither party
qualifies as a buyer in the ordinary course of business.  We further hold that the trial court did not
err in ruling that Chase established its conversion claim as a matter of
law.  We therefore affirm the judgment of
the trial court.

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Justices Jennings,
Hanks, and Bland.











[1] After the trial court severed Chase’s claims it
granted US Bank’s motion for summary judgment and rendered judgment against
NXCESS for breach of warranty.





[2] NXCESS cites two cases from Alabama and Georgia to
support its contention that Avatar Trust obtained voidable title.  See Hodges Wholesale Cars v. Auto Dealer’s Exchange, 628 So.
2d 608, 610–11 (Ala. 1993); Charles Evans BMW, Inc. v. Williams, 395 S.E.2d 650, 651 (Ga. Ct.
App. 1990).  In Hodges, the initial purchaser’s check
was returned for insufficient funds after he sold the vehicle to a dealer while
representing that he was the initial seller. 
Hodges, 628 So. 2d at 609.  Similarly,
in Williams, the initial purchaser
paid with a forged cashier’s check and sold the car to a dealer while
representing that he was the initial seller. 
Williams, 359
S.E.2d at 651.  In both of these
cases, the courts held that the initial purchasers,
like Sitton in Kotis, fraudulently
induced the seller to sell the vehicle and thus obtained voidable title.  Hodges,
628 So. 2d at 610–611; Williams, 395 S.E.2d at 651–52.





[3] NXCESS contends that even if the transfer to Avatar
Trust did not comply with the Certificate of Title Act, the transfer is not
automatically void because “noncompliance with the Act does not override the
clear showing of a valid and complete transfer of ownership of an
automobile.”  Hudson Buick, Pontiac, GMC Truck Co. v.
Gooch, 7 S.W.3d 191, 197 (Tex. App.—Tyler 1999, pet. denied).  In Gooch,
the Tyler Court held that a non-compliant transfer, in which
the buyer purchased a vehicle without a transfer of the certificate of title,
is valid if the transfer does not defeat the purposes of the Act.  Id. at 197–98.  One
purpose of the Act is to “lessen and prevent theft of motor vehicles.”  Id. at 197.  An
additional purpose is to “lessen and prevent . . . [the]
sale of encumbered vehicles without disclosure of existing liens.”  Id.; Tex. Transp. Code Ann. § 501.003(3) (Vernon 2007).  When Cavazos sold the car to Avatar Trust, he
provided a certified copy of the certificate of title which noted Chase’s lien,
but he also provided the forged letter purporting to release the lien.  Because of the forged release, this
transaction did not validly transfer title to Avatar Trust and defeated the
Act’s goal of disclosing existing liens.