

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-24-00390-CV

OLD REPUBLIC SURETY COMPANY, APPELLANT

V.

XL FUNDING, LLC D/B/A AXLE FUNDING LLC, APPELLEE

On Appeal from the 342nd District Court
Tarrant County, Texas[1]
Trial Court No. 342-348157-23, Honorable Kimberly Fitzpatrick, Presiding

October 8, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Old Republic Surety Company ("Old Republic"), appellant, appeals from the trial court's order granting summary judgment in favor of appellee XL Funding, LLC ("XLF"). We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

---

[1] Originally appealed to the Second Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE § 73.001.

## BACKGROUND

XLF, a floorplan lender that provides financing for automobile dealerships, entered into a Demand Promissory Note and Security Agreement with Wedad Cars LLC ("Wedad"), a car dealership, in April of 2021. Under the Note, XLF retained a continuing security interest in Wedad's motor vehicle inventory, as well as a blanket security interest in all inventory, chattel paper, and proceeds thereof, then owned or after acquired. XLF perfected its interest in this collateral by filing a UCC-1 financing statement with the Texas Secretary of State. After XLF's advancement of funds, Wedad acquired the three vehicles at issue in this case: a 2014 Toyota Sienna, a 2017 Mercedes C-Class, and a 2015 Cadillac Escalade. XLF holds the original Texas Certificate of Title to the three vehicles.

Between March 17 and April 1 of 2023, Wedad sold the three vehicles to third parties. However, Wedad failed to remit funds to XLF upon the sale of the vehicles as agreed, leading XLF to declare the Note to be in default. Meanwhile, each vehicle purchaser applied for and was issued a Certificate of Title Surety Bond from Old Republic. In their applications, each purchaser stated that Wedad's principal, Yosif Wedad Yonis, told them that he had lost the title to the vehicle.

In July of 2023, Yonis filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. In October of 2023, XLF filed a complaint in the bankruptcy proceeding, seeking a determination that Yonis's debt to XLF under the Note was nondischargeable. The bankruptcy court found the debt nondischargeable and in January of 2024 awarded XLF a judgment against Yonis in the amount of $71,131.17, plus attorney's fees. Yonis has not paid the judgment to XLF.

2

In November of 2023, XLF brought this suit in district court against Old Republic, alleging that Old Republic failed to comply with section 501.053 of the Texas Transportation Code. Both parties filed motions for summary judgment, and XLF's motion prevailed. The trial court awarded XLF a judgment in the amount of $51,957.20, representing the collective amount XLF was due for the three vehicles, along with attorney's fees and interest.

After the trial court denied Old Republic's motion to reconsider and motion for new trial, Old Republic brought this appeal.

## ANALYSIS

Old Republic raises three issues on appeal, challenging the propriety of summary judgment, the lump sum judgment awarded, and the award of attorney's fees. In its first issue, Old Republic asserts that the trial court erred in granting XLF's motion for summary judgment seeking to recover under section 501.053 of the Texas Transportation Code.[2] Old Republic argues XLF was not a "prior lienholder" pursuant to the statute and was not damaged by Old Republic's issuance of bonded title to third-party purchasers.

We review a grant of summary judgment de novo. *Trial v. Dragon*, 593 S.W.3d 313, 316–17 (Tex. 2019). To prevail on a motion for summary judgment, a movant must

---

[2] Old Republic did not appeal from the denial of its motion for summary judgment. Generally, in a case in which both sides move for summary judgment, a court reviewing the grant of one motion also reviews the denial of the competing motion. *See City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 259 (Tex. 2018). In this appeal, however, Old Republic asserts that a fact issue exists and its prayer for relief requests reversal and remand. Because appellate courts may not grant more relief than requested, we conclude that reversal and remand is the most relief to which Old Republic is entitled. *See Zaidi v. Shah*, 502 S.W.3d 434, 446 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). A plaintiff seeking summary judgment must conclusively prove all essential elements of its claim. TEX. R. CIV. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986) (per curiam). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002) (per curiam).

Section 501.053 of the Texas Transportation Code allows a person to obtain title to a vehicle by filing a bond with the Texas Department of Motor Vehicles if the vehicle is in the possession of the applicant and there is no security interest on the vehicle. TEX. TRANSP. CODE § 501.053(a)(1). To obtain title in this manner, the applicant must file a bond that is "conditioned to indemnify all prior owners and lienholders" and certain others "against any expense, loss, or damage, including reasonable attorney's fees, occurring because of the issuance of the title . . . ." *Id.* § 501.053(b)(5). The statute further provides that any "interested person has a right of action to recover on the bond for a breach of the bond's condition." *Id.* § 501.053(c).

Old Republic asserts that XLF was not entitled to summary judgment granting recovery under the bond because it was not a "prior lienholder" and because a factual dispute exists as to whether XLF incurred any loss or damage "because of the issuance of the title." Because we conclude that XLF failed to conclusively establish it was damaged by Old Republic's issuance of titles, which is dispositive, we need not address

4

Old Republic's "prior lienholder" argument or the contentions raised in its other issues. *See* Tex. R. App. P. 47.1.

In its motion for summary judgment, XLF claimed that it "was damaged as a result of [Old Republic's] issuance of the Bonds . . . because XLF was unable to use the Vehicles' Certificates of Title as leverage to get Wedad to pay all amounts due for each of the Vehicles." It similarly asserts in its appellate briefing, "Because [Old Republic] issued the Bonds for the Vehicles, [XLF] was unable to use the Vehicles' certificates of title to obtain the payment of the deficiency balance owed by Wedad." In response, Old Republic argues that (1) XLF did not hold a security interest in the vehicles when Old Republic issued bonded title for them and (2) XLF had no statutory right to hold the vehicles' titles.

The summary judgment evidence does not establish that XLF incurred any loss or damage "because of the issuance of the title" by Old Republic. Tex. Transp. Code § 501.053(b)(5). XLF had a perfected security interest in the vehicles when they were part of Wedad's inventory. The terms of the Note allow Wedad to sell its inventory in the ordinary course of its business. Following such sales, XLF's security interest attached to the proceeds of the sales. *See* Tex. Bus. & Com. Code § 9.315(c) ("A security interest in proceeds is a perfected security interest if the interest in the original collateral was perfected."). The Note requires Wedad to hold in trust the sales proceeds from the disposition of lender-financed inventory for repayment to XLF within a specified time frame. XLF suffered a legal injury when Wedad defaulted under the Note by failing to promptly pay XLF for the financed portion of the vehicles he sold.

5

If Wedad sold vehicles to buyers in the ordinary course of business, such buyers took the vehicles free and clear of any XLF security interest.[3] TEX. BUS. & COM. CODE § 9.320(a) (buyer in ordinary course of business takes goods free of security interest created by seller), § 9.315, cmt. 2 ("[T]he general rule that a security interest survives disposition does not apply if the secured party entrusts goods collateral to a merchant who deals in goods of that kind and the merchant sells the collateral to a buyer in ordinary course of business."); *see also One World Bank v. Miller*, No. 05-21-00705-CV, 2023 Tex. App. LEXIS 363, at *17 (Tex. App.—Dallas Jan. 20, 2023, no pet.) (car dealer's sale of inventory to buyer cut off bank's perfected lien in inventory sold); *First Nat'l Bank of El Campo v. Buss*, 143 S.W.3d 915, 923–24 (Tex. App.—Corpus Christi–Edinburg 2004, pet. denied) (purchaser of vehicle from car dealership in ordinary course of business terminates floor plan financier's security interest in same vehicle). Moreover, title to the vehicles passed to the buyers upon delivery or possession, even if the document of title was to be delivered later. *See Vibbert v. PAR, Inc.*, 224 S.W.3d 317, 322 (Tex. App.—El Paso 2006, no pet.) (citing TEX. BUS. & COM. CODE § 2.401(b)). The issuance of bonded titles to owners to whom title had already passed, to vehicles in which XLF has not established that it had a security interest, could not harm XLF.

Further, we are not persuaded by XLF's argument that it had a contractual right to hold the vehicles' titles. First, the evidence XLF cites in support of its claim, section 9.2 of the Note, does not support XLF's position. The provision requires Wedad to deliver titles to XLF after XLF funds the Floorplan Advance. The section concerns title to

---

[3] XLF asserts that Old Republic has failed to carry its burden to establish that the buyers were buyers in the ordinary course of business.

6

Wedad's inventory of yet-to-be-sold vehicles but does not address XLF's right to continue to hold title to vehicles that have been purchased by a consumer. Even if the Note intended to grant XLF a right, as between XLF and Wedad, to continue to hold the titles, we are disinclined to interpret the Note in a way that would deprive third-party purchasers of their rights to title. *See Walmart Stores, Inc. v. Xerox State & Local Sols., Inc.*, 663 S.W.3d 569, 582 (Tex. 2023) ("Generally, the contractual benefits and burdens belong solely to the contracting parties . . . ."); *Munters Euroform GmbH v. Amer. Nat'l Power, Inc.*, No. 03-05-00493-CV, 2009 Tex. App. LEXIS 9860, at *10 (Tex. App.—Austin Dec. 31, 2009, pet. dism'd) (mem. op.) ("Although we must try to give effect to all terms of a contract, we cannot interpret contracts in ways that allow parties to exercise powers they do not possess, particularly when that exercise purports to deprive another party of its rights."). Moreover, XLF has not directed us to any authority recognizing "loss of bargaining leverage" as a recoverable element of damages. In *Wohlstein v. Aliezer*, the Fourteenth Court of Appeals reaffirmed that "Texas law does not currently recognize 'lost bargaining leverage,' by itself, as a legally compensable injury." 321 S.W.3d 765, 774 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see also Swanson v. Wells Fargo Home Mortg.*, No. 14-02-00732-CV, 2003 Tex. App. LEXIS 10510, at *8 (Tex. App.—Houston [14th Dist.] Dec. 16, 2003, no pet.) (mem. op.) (holding that alleged "damage" to borrower, lack of leverage against builder, was not foreseeable consequence of lender's purported breach of agreement).

Finally, XLF contends that the affidavit it provided in support of its motion for summary judgment was uncontroverted and unobjected to and thus establishes that XLF

was damaged.[4]   Even an uncontroverted affidavit does not substitute for evidence establishing the necessary causal nexus between Old Republic's conduct and XLF's alleged damages.  *See McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 394 (Tex. 2019) ("[I]t is well settled that the naked and unsupported opinion or conclusion of a witness does not constitute evidence of probative force and will not support a jury finding even when admitted without objection.") (citation omitted); *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992) (business owner's conclusory testimony on lost profits constituted no evidence).   Here, the affidavit does not establish that any damages incurred by XLF were caused by Old Republic's actions.

Having found that XLF failed to establish an element required for recovery under the bond, we conclude that XLF was not entitled to summary judgment.  We need not reach Old Republic's other issues on appeal.  TEX. R. APP. P. 47.1.

## CONCLUSION

For the reasons set forth above, we reverse the summary judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

Judy C. Parker
Justice

---

[4] The affiant stated that "XLF was damaged as a result of [Old Republic's] issuance of the Bonds . . . because XLF was unable to use the Vehicles' Certificates of Title as leverage to get Wedad to pay all amounts due for each of the Vehicles."

8